UNITED STATES of America,
Plaintiff-Appellee,

v.

John Richard BEY,
Defendant-Appellant.

No. 75–2217.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1976.
Rehearing Denied March 3, 1976.

---

Harlan P. Cohen, Dallas, Tex. (Court-appointed), for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, Jr., Anna E. Stool, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant John Richard Bey and his wife Rita were charged in a two-count indictment of possessing with intent to distribute approximately 361 pounds of marihuana, and conspiracy to do the same, in violation of 21 U.S.C. §§ 846 and 841(a)(1). In the conspiracy count Oscar Joseph Benavides was named as a co-conspirator but not as a defendant. A jury trial resulted in the conviction of defendants on both counts. Only John Richard Bey appeals therefrom. We affirm.

Appellant challenges the sufficiency of evidence and further contends that the trial court erred in the following respects: in refusing to allow a continuance to enable him to secure the presence or testimony of co-conspirator-informant Benavides; in failing to suppress evidence obtained through an alleged unlawful search and seizure; and in wrongly admitting certain testimony alleged by appellant to be either hearsay

or highly prejudicial. Appellant presented no evidence. Rita Bey testified on her own behalf but called no witnesses.

The evidence shows that on April 30, 1973, Oscar Joseph Benavides, at the time an informant for Dale W. Schuiteman, Special Agent for the Drug Enforcement Administration in Detroit, Michigan, telephoned Schuiteman saying that he was in Pharr, Texas with John and Rita Bey who had come down to purchase marihuana. On May 3, 1973, Horace Ayala, Special Agent for the Bureau of Customs stationed at McAllen, Texas, received information from Special Agent Pooley in Laredo, Texas, concerning defendants, their traveling companion, Benavides, and a 1967 Ford vehicle owned by Rita Bey, which prompted him to investigate their activities. Agent Ayala located the Ford at the Mag Motel at Pharr, Texas and set up a surveillance on the vehicle. On May 4, Agent Ayala observed appellant, his wife and Benavides leave the Mag Motel together in the Ford and proceed toward Rio Grande City. The vehicle was next seen entering the United States from Mexico at Roma, Texas by Falcon Heights agents who telephoned this information to Agent Ayala according to his testimony. Surveillance was again taken up and Agent Ayala later saw defendants and Benavides return in the Ford to the Mag Motel. On May 5, at approximately 3:30 a. m., Agent Ayala visited Benavides at the Dixie Court Motel in an effort to obtain information about the defendants. Agent Schuiteman testified that later that day Benavides called him to say that Agent Ayala had inquired about the activities of the Beys, that the people with whom defendants were negotiating for narcotics occupied the adjoining room, he was fearful for his life, and "the deal was off." Agent Ayala testified that later that day he saw Rita Bey enter a taxicab and proceed toward a bridge connecting with Mexico.

On the following day, May 6, Agent Ayala's vigil was fruitful. At about 10:30 a. m. he saw Rita Bey driving a white 1967 Pontiac, a vehicle which Ayala knew through investigation and reliable information to have been used to transport marihuana. The vehicle left the parking lot adjacent to the Mag Motel, and stopped in the front of the motel. John Bey got into the Pontiac and attempted to drive it. After 30 or 40 yards the vehicle again stopped. John Bey then got into the Ford and pushed the Pontiac to the Shamrock Service Station located approximately a quarter of a mile away. During this operation Rita Bey was driving the Pontiac with Benavides as a passenger. The attendant put gas into the tank of the Pontiac and with the assistance of John Bey and Benavides pushed the vehicle to the parking lot of the service station. Defendants and Benavides then left the parking lot in the Ford. At that time Agent Ayala requested assistance from other agents and the surveillance on the Pontiac was resumed. He learned that the vehicle belonged to Eva Ziegler, a person known by him to be a suspect in marihuana smuggling. Agent Green responded to a call from Agent Ayala and arrived at the scene with a dog trained in marihuana detection. The dog responded with a positive alert, indicating that the vehicle contained marihuana. During the following 2½ hours Agent Ayala noticed the Beys pass the station about three times in the Ford; each time they looked in the direction of the Pontiac. Assuming that he had been seen by the Beys and that the case had been jeopardized, Agent Ayala along with Agent Murphy followed the Ford to a grocery store. There the defendants were placed under arrest and advised of their constitutional rights. John Bey was also informed that there was an outstanding arrest warrant on him for bond-jumping. Defendants disclaimed any knowledge about the vehicle. John Bey said that he was only "helping a man push the vehicle toward the Shamrock station." The keys to the Pontiac could not be located, although Rita Bey told Agent Ayala that she had given them to her husband and further said,

referring to her husband, "something to the effect that he knew everything." Agent Ayala observed in the side panels of the Pontiac what "appeared to be small packages wrapped in plastic"; he also detected the odor of marihuana. Benavides was subsequently arrested. That afternoon, Agent Murphy took the Pontiac to the Hidalgo Port of Entry lot where he unloaded 361 pounds of marihuana from the vehicle.

Rita Bey was called as a witness in her own behalf. She testified that the purpose of the trip to Pharr, Texas was to recover a Dodge Charger from Mexico for a friend of her husband. She went into Mexico with another friend of her husband whose name she did not know, but did not find the Charger. At no time, according to her initial testimony, did her husband cross the border between May 3 and May 6, 1973. She later contradicted herself and said that her husband accompanied Benavides to Laredo during that period. She further contradicted the latter statement to say that she had accompanied both of them to Laredo. When asked about her connection with the Pontiac she said she and her husband attempted to move it because a "Spanish fellow" asked them to do so as it was out of gas. She could give no other account of the Spanish stranger or his subsequent whereabouts. In regard to Oscar Benavides, Rita Bey said that she and her husband were friendly with him, they had met him in Detroit, Michigan. She testified that she had been down in the Rio Grande Valley twice before the May 1973 incidents. Out of the presence of the jury, upon questioning by the Court, she again insisted that she had been to the Valley on two former occasions. When the jury returned to the courtroom she emphatically denied ever having previously been in the Rio Grande Valley. She further denied having made any statements to Agent Ayala after she was arrested, or of having any knowledge of the marihuana concealed in the Pontiac.

*Appellant's motion for continuance.*

[1] Approximately two months prior to the trial date appellant moved for a continuance because of the absence of certain unnamed witnesses. The motion failed to disclose what testimony was expected to be given, and was denied. Oscar Benavides was subpoenaed by all parties but prior to the trial date was arrested by California authorities for grand theft. When the Government learned of appellant's incarceration a Writ of Habeas Corpus Ad Testificandum was issued; however, it was received too late for execution prior to the trial date. The prosecution authorities made every good-faith effort to obtain his presence, but were unsuccessful.[1] In chambers neither defense counsel nor Government counsel was able to state with certainty what the testimony of Benavides would be. The trial judge again declined to grant a continuance. Appellant concedes that the fundamental element of due process and the Sixth Amendment guarantee of compulsory process is not breached merely by the failure of a subpoenaed witness to appear at trial. He contends, however, that the trial court abused its discretion in denying a continuance inasmuch as Benavides was, except for defendants, the sole witness to the alleged criminal activities, thus denying him the right to present essential testimony. This contention is not supported by the record.[2] Agent Ayala witnessed all of the Beys' actions in connection with the Pontiac and gave detailed testimony in respect thereto. Moreover, appellant advances

---

1. *Cf. Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

2. *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), relied on by appellant, in which it was held that the trial court committed prejudicial error in permitting the Government to withhold the identity of an informer who was the sole participant, other than the accused, in the crime charged, is clearly distinguishable on its facts.

no theory under which testimony of Benavides would be helpful. If the implication is that Benavides' testimony would have corroborated that of Rita Bey, i. e., that the vehicle belonged to a stranger who asked for assistance, the only defense relied on by appellant, it would have been cumulative. The jury rejected that explanation. We find no violation of due process and no abuse of trial court discretion.

*The motion to suppress.*

■ Appellant's contention that the warrantless search of the Pontiac in an area removed from the arrest and seizure was violative of Fourth Amendment rights is meritless. While disclaiming any legitimate interest in the vehicle searched or the merchandise seized, thus foregoing the right to assert standing,[3] appellant nevertheless contends that he was deprived of his Fourth Amendment rights by the warrantless search of the abandoned vehicle. Even if standing were conceded, *arguendo,* appellant's argument fails. The marihuana was both seen and smelled by Agent Ayala before the vehicle was moved to the Hidalgo Port of Entry lot. These facts and Agent Ayala's apprehension that defendants would attempt to move the vehicle or remove its contents supplied "the probable cause factor" that developed on the scene and "still obtained" at the seizure lot. *Chambers v. Maroney,* 399 U.S. 42 at 52, 90 S.Ct. 1975 at 1981, 26 L.Ed.2d 419 (1970). *See also Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), decided December 1, 1975.

*The admission of certain alleged hearsay testimony and the sufficiency of the evidence.*

Four instances of allegedly inadmissible hearsay evidence are complained of by appellant.

■ The testimony of Agent Schuiteman that Benavides telephoned him on April 30, 1973 to tell him that the Beys were in the area to purchase marihuana was elicited by defense counsel on cross-examination. The testimony of Agent Ayala that he had learned that the Pontiac was registered to Eva Ziegler, a person suspected of marihuana smuggling activities, was admitted without objection of defense counsel. No curative instruction was requested in either of these instances. The rule consistently followed in this circuit is that where there is no objection to hearsay evidence, the jury may consider it for whatever value it may have; such evidence is to be given its natural probative effect as if it were in law admissible. *United States v. Pearson,* 5 Cir., 1975, 508 F.2d 595, 596; *United States v. Shiver,* 5 Cir., 1969, 414 F.2d 461, 463; *Newsom v. United States,* 5 Cir., 1964, 335 F.2d 237, 238.

■ The evidence of Agent Schuiteman in regard to Benavides' telephone call on May 5 informing him that the "deal was off" and referring to the Beys' participation in a marihuana transaction was admitted over the objection of defense counsel. The district judge, however, instructed the jury that they should consider such evidence only if they should find independent of that testimony that a conspiracy did exist. On the day of the telephone conversation, the role of Benavides, regardless of his former status as informant, was that of a co-conspirator. He had relinquished his status of Government informer by declaring to Agent Schuiteman that he no longer intended to cooperate, in an apparent effort to induce the agents to forego further investigation. His subsequent actions in assisting defendants to move the suspect vehicle established that he was a participating co-conspirator in the criminal activities of defendants. In order that out-of-court declarations of a

---

**3.** *See Brown v. United States,* 411 U.S. 223 at 229, 93 S.Ct. 1565 at 1569, 36 L.Ed.2d 208 (1973); *United States v. Hunt,* 5 Cir., 1971, 505 F.2d 931.

co-conspirator be admissible, there must be independent proof of the existence of the conspiracy and of the defendant's connection with it. *United States v. Menichino,* 5 Cir., 1974, 497 F.2d 935, 942; *United States v. Apollo,* 5 Cir. 1973, 476 F.2d 156, 159. There was abundant independent evidence to connect appellant with the conspiracy and the actual possession of the marihuana from Agent Ayala's testimony alone which render the statement of Benavides admissible.

■ The testimony of Agent Ayala that he received a telephone call informing him that the Ford had crossed the Roma Bridge is challenged by appellant on the theory that it implied that he was participating in smuggling operations and the testimony was therefore prejudicial. The short answer to this contention is that appellant was not charged with smuggling, and that the testimony had no impact on the defense of the crimes charged. Moreover, the evidence as detailed above to support the conspiracy and possession charges was abundant. We find no prejudice resulting to appellant from the admission of this evidence.

■ Taking the view most favorable to the Government, there was substantial evidence to support the jury verdict and it must therefore be sustained. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The incredible testimony of Rita Bey so abounded in self-contradictions and unreasonable explanations that the jury was justified in rejecting it in light of the evidence presented by the Government.

Affirmed.