**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Tony Lamar MILLICAN, Defendant-Appellant.**

**No. 27600**

**Summary Calendar.**

United States Court of Appeals
Fifth Circuit.

Aug. 8, 1969.

Frank H. Jones, Rome, Ga., court-appointed, for appellant.

John W. Stokes, Jr., U. S. Atty., Robert L. Smith, Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before JOHN R. BROWN, Chief, Judge, THORNBERRY and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

■ Tried along with his younger, twenty-year-old brother Danny, the appellant Tony Millican, age twenty-six, was found guilty on two counts of causing to be transported in interstate commerce two, separate forged American Express money orders with intent to defraud in violation of 18 U.S.C.A. § 2314. No exceptions were taken to the charge and no attack is made on the sufficiency of the evidence. The latter is no concession at all since the record contains more than ample eyewitness testimony to implicate both defendants. The sole attack here is on (a) the inadequacy of preparation time afforded Tony's court-appointed counsel and (b) the failure to grant a continuance to obtain the testimony of a witness who tended to establish an alibi. As we view it, under the special circumstances of this case the two coalesce, leaving us with uncertainty as to the fundamental fairness of the trial, and in our supervisory role over conduct of criminal trials in the Federal Courts we reverse and remand for a new trial.[1]

The evidence of the crime is unimportant except for the like testimony of the drive-in bank teller witnesses that Danny and Tony were together in a black Lincoln Continental car as each of the two money orders was cashed on September 9, 1968, at separate banks in Cedartown, Georgia (approximately 60 miles from Atlanta). Consequently, an alibi for one of the two would, or at least could, have the extraordinary result of establishing an alibi for the other, or perhaps more accurately, could undermine the reliability of the identification testimony.

1. Pursuant to new Rule 18 of the Rules of this court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804 (Part I).

The trial was begun and concluded on Wednesday, March 19, 1969.[2] Counsel for Tony was not appointed until arraignment on Monday, March 17.[3]

■ From the briefs, it is uncontradicted that Tony's CJA-appointed counsel was new at the Bar and that this was his first trial in a Federal Court. That he made so much of what he had in the time he had is proof of his own resourceful competence. But these factors, not reflecting the least bit either on the attorney's competence or performance, are themselves of relevance in determining whether a 48-hour time for preparation is adequate. Because the decision on what is adequate time must be left largely to the informed discretion of the Trial Judge, Joseph v. United States, 9 Cir., 1963, 321 F.2d 710, 712–713; Ray v. United States, 8 Cir., 1952, 197 F.2d 268, it is important that we are not plagued with doubts on the basic fairness of the proceeding. *Cf.* Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

■ We doubt that the issue of shortness of preparation time, standing alone, merits reversal. Likewise, we think that the question of the denial of the continuance would fare no better, since this, too, is an area of Trial Judge discretion. Sellers v. Smith, 5 Cir., 1969, 412 F.2d 1002; McKissick v. United States, 5 Cir., 1967, 379 F.2d 754. But here they meld.[4] The continuance was sought to obtain the presence of H. J. Trimble, who apparently lived in Atlanta. Tony's counsel learned of him but had not yet had the time to find him or talk with him. Danny's counsel apparently had a subpoena outstanding for him, but on the day of the trial it had not been served. At the relevant time, Trimble was an oil company employee who would be able to identify and testify with respect to routine time records of employment in one of the company's Atlanta filling stations. If—and the if was, or may be assumed to have been, a big one—his testimony would reasonably have supported the inference that Tony had been working during the daytime eight-hour shift, it would have permitted the jury to conclude that this threw considerable discredit on the eyewitnesses' identification of Danny and Tony, since the uniform story was that both defendants were together each time.[5] The Court engaged in an extended colloquy with counsel when this subject came up. Again he was disturbed about the "term" problem and what he seemed to regard as an un-

2. From conviction to appeal and this reversal only 142 days have elapsed. From the standpoint of reduction in delays in the criminal law process, this case illustrates the administrative workability and soundness of our system of judicial screening and disposition without oral argument. See note 1 *supra.*

3. The Trial Judge's problem was complicated by several factors. First, he was unable to arraign Tony earlier, since Tony had to be released by the Tennessee authorities from their custody for this federal trial. Second, the trial was at the Rome division where rigid terms are presumably followed so that there was a prospect of a continuance to the next term. Third, counsel for Danny had been retained earlier, about March 6, and on counsel's statement to the Court on March 17 of the likelihood of conflict between the two brothers, the Court had to appoint separate counsel for Tony or (a) grant the severance sought for Dan-

ny (which he had just denied) or (b) see the whole case go over to the next term.

4. Cf. Welch v. United States, 5 Cir., 1968, 404 F.2d 414.

5. A factor bearing on identity was a difference in the testimony of the eyewitnesses about the dress of the two defendants at each of the two incidents, which occurred within a short span of time in a small city. Likewise, a factual doubt of arguably persuasive force was the failure of the FBI laboratories to establish that the handwritten forged signatures were in the handwriting of either Tony or Danny. Another was the testimony by Danny's counsel that following a staged identification confrontation with one of the bank tellers, the teller stated to counsel on the telephone that she did not recognize Danny as one of the two who presented the forged money order on September 9.

avoidable continuance to the next term. (See note 3 *supra*). The prosecutor, with a sort of knee-jerk response, objected to the use of the time record (a copy of which one of the counsel had). But on seeing that the record did not undertake to identify either the tour shifts worked or which eight-hour shift Tony worked on September 9, the prosecutor agreed to let it in under a stipulation that the witness, if called, would testify that this was the record *period*—and the *period* was important since nothing would thereby be proved about the actual hours worked by Tony on September 9.

Of course, in many situations it would have been incumbent on counsel to know the details and advise the Court concerning what further facts were known to the proposed witness. But here the shortness of time between appointment and trial did not afford Tony's counsel opportunity to obtain this information. There is no question of dilatoriness either by Danny's or Tony's counsel. Neither attorney—and certainly not Tony's—was sure of just what more the witness could do beyond proving up the time record as a business record.

With identification just about the only defense available, we do not think that in an atmosphere of claimed conflict Tony's counsel had to rely on what little more Danny's counsel knew about what the witness knew. He was entitled to have a fair chance to follow up the lead and check it out. For all we know the witness could have furnished further facts concerning hours of the tour shifts, differences in methods of recording day and night shifts, etc. Then, even though still lacking in specificity to show that Tony had worked the day shift which spanned the occasion of cashing the two money orders in Cedartown, the record, with that much flesh and blood filled out, might have been enough to sow seeds of doubt in the jury's, or at least one juror's, mind.

■ We do not place our decision on a constitutional basis. In our supervisory role over the Federal Courts, however, we think that under the circumstances of this case the brief preparation time allowed failed to measure up to the standards of a proper trial. We do not of course, propose to lay down or even intimate a precise minimum timetable, but we would think that in the setting of today's dynamic month-by-month, if not week-by-week, developments in criminal law procedure, forty-eight hours is hardly enough for a young, inexperienced lawyer—or a seasoned hand for that matter—to check out both facts and law, particularly in a case involving events occurring at a locality other than the place of trial.[6] Not the least of the things that counsel needed to have was time to consult with the accused as to the best course of action for his client. It is a mistake to think that counsel may perform his awesome role only by exposing the accused to a trial. Handicapped as counsel was by a defendant under present confinement and with a rich history of earlier state convictions, it was pretty clear that counsel could not run the risk of putting the defendant on the stand. Perhaps counsel's highest and best performance would have been to persuade the client to enter a truly voluntary plea of guilty [7] in the hopes of a favorable sentence.

6. The cashing of the money orders occurred in Cedartown, 18 miles from Rome. Of course, an element of the Government's case was to provide (a) spuriousness of the indorsement and (b) interstate commerce. The first (a) came from a young Alabamian then a student at Georgia Tech in Atlanta, and the second (b) came from an officer of the New York office of American Express.

7. *Cf*. United States v. Jones, 4 Cir., 1968, 392 F.2d 567, cert. denied, 393 U.S. 882, 89 S.Ct. 186, 21 L.Ed.2d 156, where the Court stated:

"On the other hand, this is the kind of case which never should have been tried. Where there is no defense on the merits and the prosecution's case is readily provable, nothing is gained for the defendant by pleading not guilty and other opportunities, e. g., plea bargaining, may be lost by the entry of such a plea. In such a situation, counsel's primary duty to his client does not conflict with a proper sense of re-

The case must therefore be reversed and remanded for further consistent proceedings.

Reversed and remanded.

sponsibility to the courts and the public. Both dictate that the client be advised strongly to plead guilty. But, of course, the ultimate decision belongs to the client. Thus we do not impute to counsel the responsibility for the unwise decision to force a full scale trial."

392 F.2d at 569 n. 3.