**August Richard GUELDNER**

v.

**Louis A. HEYD, Sheriff, Parish of Orleans.**

**William Roscoe SKINNER**

v.

**Louis A. HEYD, Jr., Criminal Sheriff, Parish of Orleans.**

**Alton J. CHARBONNET**

v.

**Louis A. HEYD, Jr., Sheriff, Parish of Orleans, State of Louisiana.**

**Misc. Nos. 1516, 1519, 1520.**

United States District Court, E. D. Louisiana, New Orleans Division.

April 21, 1970.

Dean A. Andrews, Jr., Michael Barry, New Orleans, La., for August Gueldner.

George M. Leppert, New Orleans, La., for William Skinner.

Robert S. Link, Jr., New Orleans, La., for Alton Charbonnet.

Jim Garrison, Dist. Atty., Louise Korns, John Volz, Asst. Dist. Attys., City of New Orleans, La., for Louis A. Heyd, Sr.

HEEBE, District Judge.

This cause came on for hearing on a previous day on the motion of August Gueldner, William Skinner and Alton Charbonnet for a rehearing on the judgment given by this Court on January 30, 1970, in the above-captioned case. Having heard the arguments of counsel, having studied the legal memoranda submitted and having duly reconsidered all of the evidence previously taken, the Court is now fully advised in the premises and ready to rule.

The main thrust of petitioners' argument is that this Court has adopted the conclusions of law as announced by the Louisiana Supreme Court as binding on its decision, contrary to the mandate of the United States Supreme Court in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). At 318, 83 S.Ct. at 760, it is stated:

"Although the district judge may, where the state court has reliably found the relevant facts, defer to the state court's findings of fact, he may not defer to its findings of law. It is the district judge's duty to apply the applicable federal law to the state court fact findings independently. The state conclusions of law may not be given binding weight or habeas. That was settled in Brown v. Allen, supra, 344 U.S. [443] at 506, 73 S.Ct. [397] [97 L.Ed. 469] (opinion of Mr. Justice Frankfurter)."

In Brown v. Allen, 344 U.S. 443, at 506, 73 S.Ct. 397, at 446, 97 L.Ed. 469

(1952), Mr. Justice Frankfurter, in his concurring opinion, stated:

"State adjudication of questions of law cannot, under the habeas corpus statute, be accepted as binding. It is precisely these questions that the federal judge is commanded to decide."

Petitioners' argument is prompted by our reliance on the Louisiana Supreme Court decision in our own written judgment and the absence of citation to federal cases. Petitioners assume their federally protected rights were not considered. Petitioners' assumption is erroneous.

■ In the case at bar, the state court has already made a full evidentiary hearing with written findings. In this situation this Court may, and ordinarily should, accept the facts as found in the hearing. Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770; United States ex rel. Fein v. Deegan, 510 F.2d 13 (2d Cir. 1969). As regards findings of law, the interpretation of state law by the highest court of the state is generally binding on the federal court except where such interpretation is inconsistent with the fundamentals of liberty and justice. Chavez v. Baker, 399 F.2d 943 (10th Cir. 1968). Thus, the federal court may accept the determination of a state court as to constitutional rights, after having reviewed the state proceedings and after ascertaining that all federal standards have been met. Herring v. People of the State of California, 411 F.2d 604 (9th Cir. 1969).

In the case at bar, a full evidentiary hearing was had on October 9, 1969. At this hearing petitioners agreed to submit the record and supplement it with any evidence they wished to put on. In due course this Court rendered an opinion with written reasons denying the writ.

Today, after granting a rehearing, we affirm our denial of the writ. Although we feel no compulsion to cite federal cases for authority to support our holding, nevertheless, for benefit of petitioners and their counsel (who cite no authority), we assign further written reasons.

REASONS

Petitioner Charbonnet reurges his claim that his Sixth Amendment right to have the effective assistance of counsel was violated. He claims (1) he had no attorney at his arraignment, a vital stage of the criminal proceedings, and (2) his court-appointed counsel was appointed too close to the trial date to prepare an effective defense. We disagree.

■ One instance in which the accused criminal in a state proceeding must have an attorney present at his arraignment is when that arraignment is considered to be a critical stage of the criminal proceeding in that state and that certain defenses may be forever waived if not then pleaded. At such an arraignment, the accused must have counsel, even if the accused pleads not guilty. Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). This is considered such a fundamental right, it is to be applied retroactively. Williams v. State of Alabama, 341 F.2d 777 (5th Cir. 1965).

■ Another instance in which an accused must be represented by counsel at arraignment is where the accused is either incapable of making an intelligent waiver of counsel or refuses to do so and enters a plea of guilty. Neither instance is present here.

As regards the rights of a defendant at arraignment in a federal criminal proceeding, the guiding principles are well laid out in McConnell v. United States, 375 F.2d 905 (5th Cir. 1967), at 909:

"* * * there is little doubt that the arraignment in a federal criminal prosecution is a vital part of the criminal process and consequently the accused is entitled to the assistance of counsel at that time. Johnson v. Zerbst, [304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461] supra, (1938); Hamilton v. State of Alabama, [368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114] supra,

(1962); Anderson v. United States, 122 U.S.App.D.C. 277, 352 F.2d 945, 947 (1965). However, the accused's lack of counsel at arraignment is not so inherently prejudicial to the rights of the accused as to vitiate, in all cases, an otherwise valid conviction. To require that a conviction be set aside, it is necessary that the accused demonstrate some possible prejudice which resulted from the absence of counsel. Anderson v. United States, *supra*; McGill v. United States, 121 U.S.App.D.C. 179, 348 F.2d 791 (1965)."

In *McConnell*, the defendant argued his Sixth Amendment right to counsel was violated because he was without counsel at arraignment. At the arraignment the defendant's retained counsel was not physically present; indeed, counsel was in another state. But the defendant voluntarily entered, on the advice of his retained counsel, a plea of not guilty with leave to attack the indictment. The court, observing that such a plea did not compromise any of the defendants' rights, and that not the slightest possibility of prejudice resulted therefrom, concluded that he was not denied his Sixth Amendment right to counsel.

A similar expression of the law was made by Judge Murrah in Johnson v. United States, 333 F.2d 371 (10th Cir. 1964), at 373:

"We think, however, the trial court adequately protected the right of appellant to the assistance of counsel when it directed the entry of a plea of not guilty. No statement was made against the accused. He made no incriminating statement whatsoever, and was not called upon to waive assistance of counsel or any other constitutional right. He cannot, therefore, complain of the deprivation of any constitutional right at this stage of the proceedings. Cf. Latham v. Crouse (10CA), 320 F.2d 120, cert. den. 375 U.S. 959, 84 S.Ct. 449, 11 L. Ed. 317; and Marshall v. United States (10CA), 321 F.2d 897."

We hold that Charbonnet was not denied his federal constitutional Sixth Amendment right to counsel when he was arraigned in state court, without an attorney, and a plea of not guilty was entered for him by the trial judge. Charbonnet has not shown, either in the record before us, or on the evidentiary hearing, how he was prejudiced by not having counsel at his arraignment.

Charbonnet next argues he was denied effective counsel because the attorney who represented him at his trial was appointed too close to the date of trial to effectively prepare pre-trial motions vital to a successful defense. Mr. Link, counsel for petitioner Charbonnet, was appointed on January 18, 1966, a date after pre-trial motions had been filed and argued by Charbonnet's two codefendants, and ruled on by the Court.

However the record discloses that on January 31, 1966, the trial court granted Mr. Link's motion to obtain transcripts of preliminary hearing and other proceedings previously held for codefendants. Mr. Link took no further action. Trial began on March 21, 1966. This part of the record was not disputed or contradicted at the evidentiary hearing.

It is axiomatic that effective presentation of a case before a jury is premised on diligent and adequate trial preparation. Thus, the right for an accused to be represented at trial means the accused has a right to an attorney who has adequate time to prepare the case. The Supreme Court expressed such a view in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, at 59, 77 L.Ed. 158 (1932), at 57:

"* * * during perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much en-

titled to such aid during that period as at the trial itself."

This rule was very succinctly stated by Judge Murrah in Willis v. Hunter, 166 F.2d 721 (10th Cir. 1948), at 723:

"We think that the right to the effective assistance of counsel contemplates the guiding hand of an able and responsible lawyer, devoted solely to the interest of his client; who has ample opportunity to acquaint himself with the law and facts of the case, and is afforded an opportunity to present them to a court or jury in their most favorable light."

▉ Observing that Mr. Link was appointed approximately two months before the trial date and that Mr. Link was furnished transcripts of the pretrial motions of Charbonnet's codefendants four to six weeks in advance of trial, we conclude that Mr. Link was not so belatedly appointed to represent petitioner Charbonnet so that petitioner's right to effective representation was not violated.

The rule which the Third Circuit has formulated, following the lead of the Fourth Circuit,[1] with respect to belated appointed counsel is this:

" * * * the belated appointment of counsel is inherently prejudicial and makes out a prima facie case of denial of effective counsel, with the burden of proving absence of prejudice shifted to the prosecuting authorities." United States ex rel. Chambers v. Maroney, 408 F.2d 1186 (3rd Cir. 1969), at 1189, 1190.

▉ That rule was formulated to protect defendants where their attorneys were appointed the day before or the very day of trial. But the date of appointment by itself is not determinative. What is controlling is the prejudice suffered by the defendant.

Thus, in U.S. ex rel. Chambers v. Maroney, *supra*, the accused met his counsel for the first time on his way to the courtroom on the day of trial; but the court concluded that because of the circumstances in that case the accused was not prejudiced and held that the accused was not denied effective representation. In United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3rd Cir. 1968), a voluntary defender was appointed on the eve of trial, and he had no chance to interview his client, but was only able to consult the notes of his colleague (who had previously consulted with the accused) and spend about one-half hour with his witnesses before the trial. In *Mathis* the court found the accused suffered no prejudice because the case was sufficiently developed by prior counsel for trial counsel to defend on what was essentially a fact question.

But in Roberts v. Dutton, 368 F.2d 465 (5th Cir. 1966), the court concluded the accused was not effectively represented. The court appointed two attorneys to represent Roberts, the accused, the morning of his trial for a capital offense. One defense counsel conferred with Roberts for some forty minutes. The trial lasted one and one-half hours, and Roberts was convicted and sentenced to twenty years. The court concluded

---

1. Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967), which upset a plea of guilty entered by the accused after consulting for only fifteen minutes with his court-appointed attorney in the courtroom; Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967), which held the inability of counsel even to consider an individual as a witness because of his late appointment was manifestly prejudicial which the state did not overcome; Martin v. Commonwealth of Virginia, 365 F.2d 549 (4th Cir. 1966), which held that a court-appointed attorney who conferred only thirty minutes with his client between an indictment re-

turned that morning and the guilty plea rendered that afternoon did not effectively represent the accused because he did not develop facts and was in no position to evaluate the case and recommend a guilty plea; Turner v. State of Maryland, 318 F.2d 852 (4th Cir. 1963), which held that defendant was adequately represented even though counsel did not consult with him until one-half hour before trial since evidence developed at habeas corpus hearing showed there was no helpful information which the accused could furnish.

that if counsel had been given sufficient time, they would have been able to develop further evidence for the defense, and they might also have been able to materially weaken the evidence of the prosecution.

In Brooks v. State of Texas, 381 F.2d 619 (5th Cir. 1967), the court held that the accused was denied effective representation when the appointed counsel waited until too late to prepare his case. Counsel was appointed on September 15, 1964, for a trial to begin on November 5, 1964, at least six weeks before trial. But counsel waited until the Friday before the Monday on which the case was set for trial to interview the accused for only fifteen to twenty-five minutes. Had the interview been earlier, defense counsel would have discovered the mental history of the accused and would have been able to develop the defense of insanity, the only defense available to the defendant. But see United States v. Valdez, 418 F.2d 363 (5th Circuit 1969).[2]

One of the latest expressions of the Fifth Circuit on this subject of belated appointment is found in United States v. Millican, 414 F.2d 811 (5th Cir. 1969). Defendant Tony Millican was on trial with his brother for violating 18 U.S.C. § 2314. Defendant Tony Millican had an attorney appointed to represent him on the day of his arraignment, two days before trial. The appellate court held that had the attorney been given more time, he could have possibly prepared a defense of alibi. The point of interest in *Millican* is that the Fifth Circuit ruled, not on a constitutional basis, but on their supervisory powers:

"We doubt that the issue of shortness of preparation time, standing alone, merits reversal. Likewise, we think the question of the denial of the continuance would fare no better, since this, too, is an area of Trial Judge discretion."

\* \* \* \* \* \*

"We do not place our decision on a constitutional basis. In our supervisory role over the Federal Courts, however, we think that under the circumstances of this case the brief preparation time allowed failed to measure up to the standards of a proper trial." 414 F.2d 811, at 813, 814.

Thus, the fact that Mr. Link was appointed nearly two months in advance of the trial by itself does not establish the fact of his effective representation by adequate trial preparation. But we find in the record no request for a continuance on the basis of lack of proper time for preparation. To the contrary, the most adequate pre-trial preparation had been accomplished by Mr. Gill, attorney for Charbonnet's codefendant and was shared with and adopted by Mr. Link.

Petitioner Charbonnet has not made an adequate showing that he was denied effective representation of counsel. We hold that petitioner Charbonnet was not denied his Sixth Amendment right to effective representation.

The main complaints of petitioners Gueldner and Skinner are that they were denied (1) effective counsel when their attorney, Mr. Gill, was forced to work late hours at the trial while he was suffering from diabetes and (2) a fair trial in that the state had a mentally alert and fresh jury and the defendants had a physically and mentally fatigued jury. Neither of these complaints is of such magnitude that we can hold petitioners were denied due process by the trial judge.

It is not infrequent that after the battle, the loser seeks to find the de-

---

2. In *Valdez* counsel was retained on Thursday preceding the Monday trial date. The trial judge refused to grant a continuance for counsel to prepare for trial. The Fifth Circuit held the trial judge did not violate his discretion because of the circumstances of the case: (1) the defendant knew for three weeks the trial date; (2) the case was not complex or difficult; (3) the prosecution offered to outline the case and assist the defense in procuring witnesses; and (4) motion for continuance did not reveal a sufficient cause.

fect in himself rather than admit the strength of the victor. Thus, both petitioners and their counsel would prefer to think that the lateness of the hour or the diabetic condition of Mr. Gill caused the jury to return the guilty verdict. Petitioners and their counsel attribute little or nothing to the prosecution or its case. This is not to say Mr. Gill was in perfect health or that he felt as strong or as comfortable as he would like. The lateness of the hour is a matter of record. But, the only determination we have to make is whether the illness of counsel was of such nature that it so affected the defense of petitioners as to deny them effective assistance of counsel. The trial judge was of the opinion that Mr. Gill was not ineffective. The record bears out the opinion of the trial judge. Petitioners have not shown how they were prejudiced.

In Thomas v. United States, 252 F.2d 182 (9th Cir. 1958), a case similar to the one at bar, Judge Bone said:

"Examination of the record shows a careful and spirited defense overwhelmed by a great quantity of evidence tending to show the guilt of appellant. The defense in no way indicates that appellant's attorney was laboring under such an illness as to substantially impair his effectiveness. It has been held that without some showing in the record that the illness of counsel was of such a nature as to have affected the defense presented it will not be held to be a denial of assistance of counsel. Hagan v. United States, 10 Cir., 9 F.2d 562." [3]

In *Hagan, supra,* the court made the observation that Hagan, whose attorney was supposedly ill to the point of being ineffective, was on trial with other codefendants whose interests were in line with and not opposed to his (Hagan's);

and that the codefendants were represented by able counsel. In the case at bar, petitioners Gueldner and Skinner, represented by Mr. Gill, were on trial with petitioner Charbonnet, represented by Mr. Link. Mr. Link was present throughout the trial and could ably bolster Mr. Gill's defense. But the record shows that almost the entire defense was conducted by Mr. Gill, which suggests that neither the trial judge nor Mr. Link considered Mr. Gill ineffective.

We hold that petitioners Gueldner and Skinner were not deprived of effective counsel when the trial judge refused to recess at 11:00 p.m. because of the alleged illness of Mr. Gill.

■ The next claim of petitioners Gueldner, Skinner and Charbonnet is that they were denied due process in that they were not given a fair jury trial. The thrust of their complaint is that the state put on their case from 3:00 p.m. to 11:00 p.m. to a jury which was mentally alert and physically fresh, while the defense was forced to put on their case from approximately midnight til 3:00 a.m. to a jury mentally sluggish and physically fatigued.

The court's research has not been able to discover a similar complaint and ruling. However, there are rulings on keeping the jury together deliberating long hours and the effect this has on "coerced" guilty verdicts. We analogize from these cases.

The basic premise is that the trial judge has great discretion in the management of the trial and that his judgments will not be interfered with unless they are clearly improper.

The greatest example of self-sacrificing, devoted and dedicated jurors is found in DeGrandis v. Fay, 335 F.2d 173 (2d Cir. 1964), cert. den. sub nom. DeGradis et al. v. New York, 375 U.S. 868,

---

3. See, also, United States v. Prujansky, 415 F.2d 1045 (6th Cir. 1969); Mende v. United States, 282 F.2d 881 (9th Cir. 1960); United States v. Vrilium Products Co., 185 F.2d 3 (7th Cir. 1950).

84 S.Ct. 91, 11 L.Ed.2d 95. This was a habeas corpus case in which petitioners claimed they were denied due process because the jury was in deliberation for twenty-four consecutive hours, without rest or sleep, and then returned a guilty verdict. The jury was in session " * * * approximately twenty-eight consecutive hours, including time taken for meals, after the jury began to receive the charge, twenty-four hours after the case was given to the jury, fifteen hours after the jury sent its first note informing the judge of its fatigue and ten hours after the next note requesting a reasonable rest," at 175.

That court reasoned the jurors did their sworn duty and the verdict should not be set aside.

"Had fatigue so affected their respective judgments as to have prevented them from properly exercising their functions as jurors, they could have so advised the court. * * * It might well be that, figuratively speaking, the jury had gotten its second wind.

" * * * we cannot say under the facts that appellants' trial was so violative of 'fundamental liberties,' * * * or so 'fundamentally lawless,' * * * as to require a reversal of the denial of the writ." At 175, 176.

A more recent case is that of United States v. Parks, 411 F.2d 1171 (1st Cir. 1969). Here, a jury went into deliberation at 1:00 p.m. on May 8, and at 1:00 a.m. on May 9 the foreman informed the court the jury could not reach a verdict and was tired. The court would not excuse the jury, and two hours later, at 3:00 a.m., the jury returned a guilty verdict. The First Circuit said there should be a new trial, but on the basis that prejudicial evidence had been submitted to the jury, and the effect of this evidence could not be stricken from the jurors' minds. The court, in dicta, then went on to say:

"We are not prepared to say that no jury under any circumstances can ever be kept at its deliberations until 3:00 o'clock in the morning. Much must be left to the discretion of the trial court. But we do frown upon the practice of keeping the jury at work until the small hours of the morning particularly when it reports that it is tired." At 1173.

In DeGradis v. Fay, *supra*, there was evidence in the verdicts themselves of the clear thinking of the jurors. In a trial involving ten defendants and sixteen counts, the jury found three defendants guilty on three counts and not guilty on all other counts; two defendants guilty on one count and not guilty on all other counts; four defendants not guilty on all counts; and one defendant on whom no verdict was reached at all.

In the case at bar, there is no such self-proving evidence. There was, however, an evidentiary hearing in state court where the factual determination was made that all the jurors were awake at all times. It must be remembered that the choice of recessing when the state rested its case was put to the jurors who agreed to continue on into the night. Against this factual background and the legal presumption that jurors will conscientiously fulfill their oath, and in the absence of petitioners' showing of prejudice, we hold the petitioners were not denied due process when their defense was presented to the jury from 12:25 a.m. to 3:00 a.m. on March 22, 1966.

Petitioners claim they were prejudiced by the trial judge giving a full conspiracy charge when no conspiracy was contained in the bill of information. Wherever two or more codefendants are jointly charged with the commission of a crime, this necessarily involves a conspiracy. An instruction is necessary to allow the jury to properly apply the evidence of witnesses who testify to things which happen outside the presence of one or more codefendants.

**1176**

The test used to determine whether the accused is prejudiced by the instruction on conspiracy (which must be given) is whether the jurors understand that they are to determine the guilt or innocence of the accused defendants only in relation to the substantive offense charged in the indictment or information and not in relation to the separate substantive crime of conspiracy. United States v. Hoffa, 349 F.2d 20 (6th Cir. 1965); Kumpe v. United States, 250 F.2d 125 (5th Cir. 1957).

It was the opinion of the trial court judge and the majority of the Louisiana Supreme Court that petitioners were not prejudiced by this instruction. Petitioners have not made an adequate showing that this opinion should be changed. We conclude that petitioners were not prejudiced by the evidentiary instruction relative to conspiracy.

We reach at last one contention petitioners urge with which we must agree. Petitioners call to our attention, and object to our citation as authority the new Louisiana Code of Criminal Procedure, which was not in effect when this case was tried to the jury. The new Code did not become effective until January 1, 1967, and trial was had in March 1966.

In our original opinion we cited Article 495 of the Louisiana Code of Criminal Procedure in denying petitioners varied claims of duplicity. We note, however, that the source of this codal article was formerly R.S. 15:221, then in effect, and this new codal article merely stated the jurisprudence. (See Official Revision Comment (a)). Therefore, we conclude that the objection of duplicity was not timely raised before the trial, and therefore petitioners have waived this defense. See State v. Richard, 245 La. 465, 158 So.2d 828 (1964); State v. Blankenship, 231 La. 993, 93 So.2d 533 (1957). Accordingly, petitioners' motion for a rehearing is hereby denied.[4]

---

4. On April 7, 1970, petitioner William Skinner withdrew his petition for habeas corpus.