UNITED STATES of America, Plaintiff-Appellee,

v.

Terry Ray UPTAIN, Defendant-Appellant.

No. 75-2487.

United States Court of Appeals, Fifth Circuit.

May 20, 1976.

---

14. *See* note 12 *supra*.

Thomas A. Larkin, Jacksonville, Fla., for defendant-appellant.

Ira DeMent, U. S. Atty., D. Broward Segrest, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before TUTTLE, THORNBERRY and TJOFLAT, Circuit Judges.

THORNBERRY, Circuit Judge:

Terry Ray Uptain appeals from his conviction for conspiracy to commit bank robbery. *See* 18 U.S.C. §§ 371, 2113 (1970). He argues that the trial court erred in refusing to grant a continuance and that the court improperly intervened during the trial on behalf of the government. Because we find that the continuance claim is a substantial one, a detailed examination of the rather unusual facts and procedural posture of the case is necessary.

I.

The evidence presented at trial reveals Uptain to be a businessman, a salesman and promoter. The record of his past includes leased Lear jets, $140,000 homes, and personal friendships with famous entertainers. It also includes serious trouble with the law, including a term at the Federal Penitentiary in Atlanta for interstate transportation of stolen motor vehicles. The acquaintances that he made there were to play a major part in bringing him before this court.

After Uptain was released from Atlanta in September, 1974, he began to put together a business to produce and market a "volcanic mud pack" made from a special mud found around San Vicente, Ecuador. Having tested the mud and found it to be satisfactory for the intended purposes, Uptain created a corporation, Century Laboratories, Inc., of Jacksonville, Florida, to market the mud packs. Because his prison record disqualified him from acting as an officer of the corporation, Uptain recruited an automobile salesman, Paul Kyer, to serve as president of Century, and began to gather and train a corps of salesmen.

Uptain's associates from the Atlanta penitentiary were also in contact with him in late 1974 and early 1975. One of them, Johnny Ray Smith, was engaged in a variety of criminal endeavors during this period. On November 15, 1974, Smith and two others robbed the Peoples Bank of Frisco City, Alabama.[1] Two months later, on January 16, 1975, Smith and another man effected the escape at gunpoint of Charles Simmons from a Florida prison road gang. A guard and Smith's companion received gunshot wounds during the escape.

The testimony of Simmons, Kyer, and Joy Lynne Yost, an employee associated with Century who became romantically involved with Kyer, revealed that the activities of Uptain and Smith became closely entwined. Uptain's corporation was running short of money, and Smith had the remedy. He invested some of the proceeds of the Frisco City robbery in Century in late November or December, 1974. Smith and Uptain were

---

1. The indictment in this case charged Uptain with conspiracy in connection with the Frisco City robbery, but no evidence at trial positively established his contemporaneous knowledge of that robbery.

thereafter seen together not only at the Century offices, but on a business flight to Ecuador as well.

The corporation's money shortage continued, however, and new bank robbery plans began. The participants were to be Smith, Luther Selby (another former Atlanta inmate), Charles Simmons, and others.[2] Final plans were made in the last days of January and the first days of February, 1975, with Uptain agreeing to finance the venture. To safeguard his interests, Uptain sent Kyer and Yost on the road with the robbers. The next week was spent in travel and preparation for the robbery of a bank at Jay, Florida. This objective was abandoned when Selby suddenly withdrew from the group. Smith, Simmons, Kyer, and Yost carried on, however, and planned to rob the Citizens Bank of Georgiana, Alabama on February 13. But when they emerged from their motel for that purpose on the assigned date, the FBI was waiting for them. A shootout followed, and Smith was killed.

Kyer, Yost, and Simmons were at that time taken into custody and charged with assaulting federal officers and possession of illegal weapons. Kyer and Yost retained Thomas Larkin, a Jacksonville attorney who also had acted as counsel for, and was an investor in, Uptain's corporations. Over two months later, on April 23, 1975, Uptain, along with Kyer, Simmons, and Yost, was indicted by a grand jury in the Middle District of Alabama. Uptain surrendered himself to authorities on April 28 and was released on bond, still not having been served with a copy of the indictment against him.

Four days later, on May 2, Uptain, Kyer, and Yost appeared for arraignment in Montgomery, Alabama. At this time, it was determined that Thomas Larkin would represent Uptain and that attorneys from another firm would represent Kyer and Yost. Larkin also stated to the court that Frank Martin, an attorney licensed to practice in Alabama, had agreed to assist in the representation of Uptain in the case. The court then had the indictment served upon Uptain, denied a venue motion, and accepted Uptain's plea of not guilty. The court set trial of the case against Kyer, Yost, and Uptain for May 12, ten days from arraignment, and permitted Larkin five days to file pretrial motions. In response to Larkin's protest that he was scheduled to be in court in Jacksonville on the 12th, the court stated only that

> you better advise Mr. Uptain that if you are not available, he will have to get other counsel, because his case is going to be tried May 12 at ten o'clock of that day.
>
> . . .

After arraignment that day, the district court learned that Uptain's bond, previously set at $25,000 by the court, had been reduced to $5,000 by a magistrate in Jacksonville. The court ordered Larkin to return to court to adjust the matter, and he remained there until five o'clock in the afternoon while unsuccessful efforts were made to contact Uptain. This being a Friday, the court ordered Larkin and Uptain to appear at 8:00 a. m. on Monday, May 5, for a hearing on Uptain's bond. The court on Monday ordered the amount of bond raised to $25,000, and Larkin was occupied during that day and part of Tuesday in arranging the bond.

Larkin nevertheless was able to return to Jacksonville and prepare during the next two days a variety of motions. On Thursday, May 8, he presented on behalf of Uptain a motion for severance, a motion to dismiss the indictment, a motion for discovery and inspection, a motion for disclosure of any promises or inducements to government witnesses, and a motion to interview government witnesses. Because Kyer and Yost had pleaded guilty earlier during the day, the motion for severance was moot, and the court denied the motion to dismiss.

With respect to the other motions, the defendant received at least partially favor-

---

**2.** The recruiting of other persons, mostly former Atlanta inmates, continued until just before the would-be bank robbers were apprehended. These persons, however, ultimately refused to participate or were unable to do so for some reason.

able rulings. The court ordered the government to furnish to the defense any statements in its possession which were made by the defendant to any state or federal government officials, and to provide for defense inspection all books, papers, documents, or tangible evidence to be introduced by the government at trial. Over the government's protest, the court held that any inconsistent statements of co-conspirators were "exculpatory material" which were required to be provided to the defense, along with all other exculpatory information in the government's possession. The court also required assurances by the government that it had no knowledge of any electronic surveillance relating to the case, and that there was no grand jury transcript.

Larkin also made a motion for continuance or, in the alternative, a motion to withdraw as counsel for Uptain. He supplemented the motion with an affidavit by Frank Martin stating that Martin also had a schedule conflict and would be unable to appear in the trial court on May 12. The motion stated that:

> The Defendant has now advised his Attorney that he has 56 Witnesses, whom he wishes to subpoena. Some are in Federal custody, several are from Dallas, Texas, and the great majority are from Jacksonville, Florida. Defendant's Attorney feels that it would be impossible for him at this late date to contact and interview said Witnesses and further subpoena them in time for Trial set for May 12, 1975.

The court denied the motion "on the ground that you haven't subpoenaed and interviewed your witnesses." The court did give Larkin, at his request, a letter for the judge of the court in which he was originally scheduled to appear on May 12, indicating that Larkin's presence in Montgomery on that date would be necessary.

On May 12, Larkin appeared and announced that he was unprepared to conduct Uptain's defense, but the court ordered him to proceed. Permission was granted for Larkin to be joined by a Florence, Alabama, attorney who was to arrive at noon. The government's case was presented, with crucial evidence against Uptain provided by Kyer, Simmons, and Yost, all of whom directly linked Uptain to the bank robbery conspiracy. Larkin thoroughly cross-examined each and, on the next day, Uptain took the stand to give his own version of the events, flatly denying any participation in the bank robbery plans. The second day of trial ended with Uptain still on direct examination.

At 9:00 on the next morning, Larkin renewed his motion to withdraw as counsel, stating that there was a conflict as to strategy between attorney and client and that Uptain's check for legal services had not been honored by his Jacksonville bank. The court expressed willingness to allow the Florence, Alabama, lawyer whom Uptain had engaged to take the lead in the case, but was unwilling to wait until the lawyer returned to court from his home in Florence, where he had gone overnight without notice to the court.

The trial continued, with Uptain finishing his direct testimony. After lengthy cross-examination, the defense put on four other witnesses. At the end of the day, the case went to the jury and a guilty verdict subsequently was returned.

## II.

██ Certain general principles of law form the framework for our resolution of the appellant's primary claim. A motion for a continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of that discretion. *E. g., Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); *United States v. Gidley*, 527 F.2d 1345 (5 Cir. 1976); *United States v. Sahley*, 526 F.2d 913 (5 Cir. 1976); *United States v. Moriarty*, 497 F.2d 486 (5 Cir. 1974). This issue must be decided on a case by case basis in light of the circumstances presented, particularly the reasons for continuance presented to the trial court at the time the

request is denied. *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *United States v. Sahley, supra*; *McKinney v. Wainwright*, 488 F.2d 28 (5 Cir.), *cert. denied*, 416 U.S. 973, 94 S.Ct. 1998, 40 L.Ed.2d 562 (1974).

The reasons for a continuance which were timely asserted in this case fall into two categories. First, Uptain through his attorney claimed that the interval between arraignment and trial was insufficient to allow proper time to prepare motions, to consult concerning the case, and to properly interview potential witnesses and subpoena them for appearance at trial. Second, counsel for Uptain asserted at trial that he could no longer represent his client as a result of conflicts of strategy and because of nonpayment for services; because no other counsel was present, withdrawal would have necessitated a continuance.

■ None of these justifications for a continuance is new to this court. To the contrary, the cases are so numerous and involve such varying factual contexts and bases for decision that merely cataloging them is a task of significant proportion. We have deemed the following factors highly relevant in assessing claims of inadequate preparation time: the quantum of time available for preparation,[3] the likelihood of prejudice from denial,[4] the accused's role in shortening the effective preparation time,[5] the degree of complexity of the case,[6] and the availability of discovery from the prosecution.[7] We have also explicitly considered the adequacy of the defense actually provided at trial,[8] the skill and experience of the attorney,[9] any pre-appointment or pre-retention experience of the attorney with the accused or the alleged crime,[10] and any representation of

---

**3.** *See, e. g., United States v. Gidley*, 527 F.2d 1345 (5 Cir. 1976); *Sanders v. United States*, 415 F.2d 621 (5 Cir. 1969), *cert. denied*, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970); *Franklin v. United States*, 384 F.2d 377 (5 Cir. 1967); *cert. denied*, 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1147 (1968); *McKissick v. United States*, 379 F.2d 754 (5 Cir. 1967).

**4.** *United States v. Miller*, 500 F.2d 751 (5 Cir. 1974), *cert. granted*, 421 U.S. 1010, 95 S.Ct. 2414, 44 L.Ed.2d 678 (1975); *United States v. Hamilton*, 492 F.2d 1110 (5 Cir. 1974); *Thomas v. Estelle*, 486 F.2d 224 (5 Cir. 1973); *United States v. Clements*, 484 F.2d 928 (5 Cir. 1973), *cert. denied*, 415 U.S. 991, 94 S.Ct. 1591, 39 L.Ed.2d 888 (1974); *United States v. Williams*, 435 F.2d 1001 (5 Cir. 1970), *cert. denied*, 402 U.S. 931, 91 S.Ct. 1532, 28 L.Ed.2d 865 (1971); *Juarez-Flores v. United States*, 394 F.2d 161 (5 Cir.), *cert. denied*, 393 U.S. 942, 89 S.Ct. 311, 21 L.Ed.2d 278 (1968); *Napoli v. United States*, 341 F.2d 916 (5 Cir. 1965); *Glenn v. United States*, 303 F.2d 536 (5 Cir. 1962), *cert. denied sub nom., Everitt v. United States*, 372 U.S. 920, 83 S.Ct. 734, 9 L.Ed.2d 725 (1963). Of course, the conclusion in a particular case that there was no prejudice by reason of a continuance denial may encompass conclusions that one or more other factors here listed, such as the availability of discovery, were present and operated to negate prejudice.

**5.** *United States v. Sahley*, 526 F.2d 913 (5 Cir. 1976); *Thomas v. Estelle*, 486 F.2d 224 (5 Cir.

1973); *Kroll v. United States*, 433 F.2d 1282 (5 Cir. 1970), *cert. denied sub nom. Adler v. United States*, 402 U.S. 944, 91 S.Ct. 1616, 29 L.Ed.2d 112 (1971); *United States v. Valdez*, 418 F.2d 363 (5 Cir. 1969); *Glenn v. United States*, 303 F.2d 536 (5 Cir. 1962), *cert. denied sub nom. Everitt v. United States*, 372 U.S. 920, 83 S.Ct. 734, 9 L.Ed.2d 725 (1963).

**6.** *United States v. Long*, 419 F.2d 91 (5 Cir. 1969); *United States v. Valdez*, 418 F.2d 363 (5 Cir. 1969); *McKissick v. United States*, 379 F.2d 754 (5 Cir. 1967); *Everitt v. United States*, 281 F.2d 429 (5 Cir. 1960).

**7.** *United States v. Hamilton*, 492 F.2d 1110 (5 Cir. 1974); *United States v. Long*, 419 F.2d 91 (5 Cir. 1969).

**8.** *United States v. Simpson*, 460 F.2d 1321 (5 Cir. 1972); *Kroll v. United States*, 433 F.2d 1282 (5 Cir. 1970), *cert. denied sub nom., Adler v. United States*, 402 U.S. 944, 91 S.Ct. 1616, 29 L.Ed.2d 112 (1971).

**9.** *Bowman v. United States*, 409 F.2d 225 (5 Cir. 1969), *cert. denied*, 398 U.S. 967, 90 S.Ct. 2183, 26 L.Ed.2d 552 (1970).

**10.** *Weaver v. State of Texas*, 474 F.2d 1135 (5 Cir.), *cert. denied*, 414 U.S. 1064, 94 S.Ct. 569, 38 L.Ed.2d 468 (1973); *United States v. Roca-Alvarez*, 451 F.2d 843 (5 Cir. 1971); *United States v. Upshaw*, 448 F.2d 1218 (5 Cir. 1971),

the defendant by other attorneys that accrues to his benefit.[11]

■ Within this general category of cases, a particularly common claim is that a continuance was necessary to interview and subpoena potential witnesses. The panels of this court that have ruled on such claims have considered the diligence of the defense in interviewing witnesses and procuring their presence,[12] the probability of procuring their testimony within a reasonable time,[13] the specificity with which the defense is able to describe their expected knowledge or testimony,[14] the degree to which such testimony is expected to be favorable to the accused,[15] and the unique or cumulative nature of the testimony.[16] A general rule recently has emerged:

A movant must show that due diligence has been exercised to obtain the attendance of the witness, that substantial favorable testimony would be tendered by the witness, that the witness is available and willing to testify, and that the denial of a continuance would materially prejudice the defendant.

*United States v. Miller*, 513 F.2d 791, 793 (5 Cir. 1975). *See also United States v. Cawley*, 481 F.2d 702, 705 (5 Cir. 1973).

cert. denied, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972); *Sanders v. United States*, 415 F.2d 621 (5 Cir. 1969), *cert. denied*, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970); *Argo v. Wiman*, 209 F.Supp. 299 (M.D.Ala.), *aff'd*, 308 F.2d 674 (5 Cir.) *cert. denied*, 371 U.S. 933, 83 S.Ct. 306, 9 L.Ed.2d 270 (1962).

11. *United States v. Abshire*, 471 F.2d 116 (5 Cir. 1972); *United States v. Gower*, 447 F.2d 187 (5 Cir.), *cert. denied*, 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 88 (1971); *Sanders v. United States*, 415 F.2d 621 (5 Cir. 1969), *cert. denied*, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970).

12. *United States v. Gidley*, 527 F.2d 1345 (5 Cir. 1976); *United States v. Harper*, 505 F.2d 924 (5 Cir. 1974); *United States v. Moriarty*, 497 F.2d 486 (5 Cir. 1974); *United States v. Nakaladski*, 481 F.2d 289 (5 Cir.), *cert. denied sub nom. Coco v. United States*, 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973); *United States v. Roca-Alvarez*, 451 F.2d 843 (5 Cir. 1971); *United States v. Stephenson*, 448 F.2d 768 (5 Cir. 1971), *cert. denied*, 405 U.S. 1069, 92 S.Ct. 1515, 31 L.Ed.2d 800 (1972); *United States v. Dupree*, 429 F.2d 564 (5 Cir. 1970); *Barnes v. United States*, 374 F.2d 126 (5 Cir.), *cert. denied*, 389 U.S. 917, 88 S.Ct. 246, 19 L.Ed.2d 273 (1967); *Parsons v. United States*, 189 F.2d 252 (5 Cir. 1951).

13. *United States v. Snyder*, 505 F.2d 595 (5 Cir. 1974); *United States v. Gloria*, 494 F.2d 477 (5 Cir.), *cert. denied*, 419 U.S. 995, 95 S.Ct. 306, 42 L.Ed.2d 267 (1974); *United States v. Cawley*, 481 F.2d 702 (5 Cir. 1973); *United States v. Pollack*, 427 F.2d 1168 (5 Cir.), *cert. denied*, 400 U.S. 831, 91 S.Ct. 63, 27 L.Ed.2d 62 (1970); *Blackwell v. United States*, 405 F.2d 625 (5 Cir.), *cert. denied*, 395 U.S. 962, 89 S.Ct. 2104, 23 L.Ed.2d 747 (1969); *Overton v. United*

States, 405 F.2d 168 (5 Cir. 1968); *Ray v. United States*, 352 F.2d 521 (5 Cir. 1965); *Suit v. Ellis*, 282 F.2d 145 (5 Cir. 1960); *Heflin v. United States*, 223 F.2d 371 (5 Cir. 1955); *Babb v. United States*, 210 F.2d 473 (5 Cir. 1954).

14. *United States v. Bey*, 526 F.2d 851 (5 Cir. 1976); *McKinney v. Wainwright*, 488 F.2d 28 (5 Cir.), *cert. denied*, 416 U.S. 973, 94 S.Ct. 1998, 40 L.Ed.2d 562 (1974); *United States v. Roca-Alvarez*, 451 F.2d 843 (5 Cir. 1971); *United States v. Pollack*, 427 F.2d 1168 (5 Cir.), *cert. denied*, 400 U.S. 831, 91 S.Ct. 63, 27 L.Ed.2d 62 (1970); *Blackwell v. United States*, 405 F.2d 625 (5 Cir.), *cert. denied*, 395 U.S. 962, 89 S.Ct. 2104, 23 L.Ed.2d 747 (1969); *Overton v. United States*, 405 F.2d 168 (5 Cir. 1968); *Jackson v. United States*, 330 F.2d 445 (5 Cir.), *cert. denied*, 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964); *Parsons v. United States*, 189 F.2d 252 (5 Cir. 1951).

15. *United States v. Cawley*, 481 F.2d 702 (5 Cir. 1973); *United States v. McPhatter*, 473 F.2d 1356 (5 Cir.), *cert. denied*, 414 U.S. 834, 94 S.Ct. 175, 38 L.Ed.2d 69 (1973); *United States v. George*, 450 F.2d 269 (5 Cir. 1971); *Foster v. United States*, 296 F.2d 65 (5 Cir. 1961).

16. United States v. Bey, 526 F.2d 851 (5 Cir. 1976); *Ellis v. Capps*, 500 F.2d 225 (5 Cir. 1974); *United States v. Moriarty*, 497 F.2d 486 (5 Cir. 1974); *United States v. Dupree*, 429 F.2d 564 (5 Cir. 1970); *Ray v. United States*, 352 F.2d 521 (5 Cir. 1965); *Jackson v. United States*, 330 F.2d 445 (5 Cir.), *cert. denied*, 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964); *cf. United States v. Clements*, 484 F.2d 928 (5 Cir. 1973), *cert. denied*, 415 U.S. 991, 94 S.Ct. 1591, 39 L.Ed.2d 888 (1974).

## III.

 Turning to the facts of this case,[17]

**17.** When an inquiry involves consideration of as many factors as are involved here, the normal judicial process of reference to specific judicial precedent is seldom fully satisfactory. Each case involves a somewhat different factual mix, which may or may not be fully described in the court's opinion. Moreover, it is difficult to determine the relative weight accorded to the factors which are expressly considered. We have found that examination of cases bearing a factual resemblance to this one fails to provide us clear guidance here.

The facts concerning the claim of inadequate preparation time in this case are similar to those in *United States v. Long,* 419 F.2d 91 (5 Cir. 1969). There the accused was indicted in June, 1967, but became a fugitive and was arrested in July, 1968. Trial was set for December 4, 1968, and the accused retained counsel. Sometime prior to trial date, the attorney withdrew from the case; the accused then retained another attorney, who notified the court of his employment on December 2, 1968. The attorney's motion for continuance on the day of trial, December 4, was denied. This court, in upholding the conviction, stated:

> In light of the uncomplicated nature of the present case, appellant's full access to the government's complete file, including names of all government witnesses and their full statements, we cannot find an abuse of discretion in denying a continuance.

*Id.* at 94. The court also noted, however, that "[t]he record does not reveal any requests for time to subpoena witnesses." *Id.*

The attorney in *Juarez-Flores v. United States,* 394 F.2d 161 (5 Cir. 1968), was appointed eleven days before trial, and had the opportunity for two conferences with the accused. He also, the court noted, filed a motion to suppress evidence against the accused. The court did grant a continuance for the remainder of the day after the jury was selected, but refused to postpone the trial further the next morning. The court, upholding the conviction, stressed that the government had cooperated with counsel and that further time would permit him only to research the case further and better prepare for cross-examination.

In *United States v. Millican,* 414 F.2d 811 (5 Cir. 1969), the court reversed the conviction of a defendant who was represented by an attorney appointed only two days before trial. Although the court noted that this was the attorney's first federal case, it did not consider that fact highly significant in light of the attorney's demonstrated competence. It relied instead upon the fact that he was unable to find and speak with a potential witness who might have been able to bolster the accused's misidentification defense. The court was careful to note the narrowness of its holding:

we find that Uptain's claim, to the extent that it is based upon an inability to inter-

> Of course, in many situations it would have been incumbent on counsel to know the details and advise the Court concerning what further facts were known to the proposed witness. But here the shortness of time did not afford Tony's counsel opportunity to obtain this information. There is no question of dilatoriness either by Danny's or Tony's counsel.

*Id.* at 814.

Turning to the facts of this case, we find that it falls within the area bounded by *Long* and *Juarez-Flores* on one side and *Millican* on the other. Although a shorter period of possible trial preparation was present in *Long,* we find that a stronger case for a continuance is presented here. In this case, full government disclosure was not made, particularly of the statements given to the government by Simmons, Yost, and Kyer. Since the testimony of these witnesses was highly incriminating to Uptain, he was in a position at trial materially inferior to that of the defendant in *Long.* We note also that the record in this case, unlike *Long,* contains an explicit request for time to subpoena witnesses alleged to be necessary for preparation of the defense.

*Juarez-Flores* is very close on its facts to this case, but the decision there apparently was affected by the defense attorney's concessions that:

> The United States Attorney gave me every cooperation and furnished me with all witnesses I asked from their file and statements.
> . . . I still feel the time for preparation is short and I would ask the Court for a ruling on the motion, but I do want to state that every cooperation has been given me and I am much better prepared today than I was yesterday.

Even more significantly, the attorney responded to the court's inquiry concerning what might be done during a continuance as follows:

> [T]he only further things I can think of would be further research on my part and preparation for cross-examination of witnesses and that opportunity will be afforded as we go along.

Because of the weakness of the attorney's claims, Uptain clearly has a stronger case for a continuance than was presented in *Juarez-Flores.*

On the other hand, the attorney in this case had a far better opportunity to prepare the defense than did the neophyte attorney in *United States v. Millican.* Larkin had a significant previous familiarity both with Uptain and the affairs of his corporation, and with the facts surrounding the bank robbery conspiracy with which his client was charged. He made his first formal appearance in this case not two days before trial as did the *Millican* attorney,

view and procure the presence of witnesses, fails to meet the rather stringent standards enunciated by this court in *United States v. Miller*. First, it can be doubted that "due diligence" in interviewing and subpoenaing witnesses was exercised. Given the number and location of the witnesses, it obviously was impossible to do a thorough job in this regard, but the court was entitled to expect initial steps in that direction to have been taken. At the May 8 hearing, the court heard no evidence of efforts of any kind by the defense. Second, there was substantial reason to doubt that any witnesses would produce the evidence favorable to Uptain that his counsel predicted. At the motion hearing on May 8, the only specific evidence mentioned by Larkin was to the effect that the government witnesses, Kyer, Yost, and Simmons, had been offered inducements to testify against Uptain. In view of the crucial importance of their testimony, such evidence clearly would have been substantially favorable to Uptain. But the Assistant United States Attorney specifically stated to the court at the hearing that no inducements of any kind had been made. We believe that the court did not abuse its discretion by accepting the government's representation on this matter and concluding that evidence of inducements would not be forthcoming. In any event, however, it is undisputed that Uptain made no showing that any of the witnesses he sought to interview and subpoena were available and willing to testify. This alone is enough to justify denial of continuance under the *Miller* standards.

The claim that the general lack of preparation time rendered the denial of a continuance an abuse of discretion must also be rejected. Although there was considerable time pressure on him, Larkin in fact was able to prepare adequate pre-trial motions and received favorable consideration on the majority of them. Uptain has failed to point out to us what other motions might have been made that could have materially aided his cause, and we are inclined to believe that there are none. Similarly, we are unable to see how more preparation would have significantly changed the course of the trial. The essence of the case against Uptain was the testimony of the co-conspirators. They were effectively cross-examined and their testimony rebutted by Uptain. The jury apparently believed the co-conspirators. Nothing has been suggested to us that would indicate the possibility of a different outcome had a continuance been granted. Accordingly we find that a great number of the factors previously considered significant—likelihood or prejudice, degree of complexity of the case,[18] the adequacy of the defense at trial, and the pre-appointment experience of the attorney with the accused and the crime—coalesce to counsel upholding the district court.

A different issue is presented by Larkin's attempt to withdraw from the representation of Uptain at trial. Because no other attorney was present and prepared to carry on, this necessarily would have involved a continuance as well. It too, however, is not an unfamiliar phenomenon to this court. *See, e. g., United States v. Dilworth,* 524

---

but ten days before trial, after over two months of representation of two co-defendants in connection with many of the events which formed the core of the case against Uptain. Because of his previous experience with the facts and with relevant parties, it could be surmised that Larkin had less need than Millican's attorney, at the time of the motion for continuance, to interview witnesses in order to prepare for trial. This prior experience, and the larger time interval between the beginning of formal representation and the motion, tend to negate any excuse for Larkin's failure to make attempts to interview and subpoena the witnesses. We be-

lieve that these circumstances significantly distinguish the instant case from *Millican*.

**18.** Uptain notes that the indictment was not a simple one, charging thirty overt acts in furtherance of the conspiracy. But many of those acts were not alleged to have involved Uptain and the government made no attempt to prove those which related to involvement by Uptain in the Frisco City bank robbery. In any event, the fact is that the trial took less than three days and turned almost entirely upon a judgment as to the credibility of Simmons, Kyer, and Yost on the one hand, and Uptain on the other.

F.2d 470 (5 Cir. 1975); *United States v. Casey*, 480 F.2d 151 (5 Cir. 1973); *United States v. Hollis*, 450 F.2d 1207 (5 Cir. 1971). In each of those cases, which involved attempts by the defendant to change attorneys, the court noted that the freedom to have counsel of one's own choosing may not be used for the purposes of delay. *See United States v. Harrelson*, 477 F.2d 383 (5 Cir. 1973), *quoting United States v. Sexton*, 473 F.2d 512 (5 Cir. 1973); *United States v. Terry*, 449 F.2d 727 (5 Cir. 1971). The courts noted in each case that there was prior opportunity to bring to the court's attention any conflicts between client and counsel and that the timing of the motion gave reason to believe that it might have been imposed for purposes of delay.

The circumstances of this case depart from these previous cases in two important particulars. First, it is not clear here that conflicts between Uptain and Larkin could have been brought out earlier. To the extent that the conflicts were matters of trial strategy only, it may be that they developed only in the few days prior to trial or on the first day of trial itself.[19] Second, as well as the existence of conflict between the two, Larkin contended that Uptain's check to him had not been honored, thus putting him in uncertainty as to whether he would be paid for his services at trial.

■ We rather reluctantly conclude again that these circumstances do not warrant a finding of abuse of discretion. Here again, counsel did not specify to a significant degree the nature of any strategy conflicts which arose, and the fact that the objection was raised only on the third and last day of trial, after repeated attempts to obtain a continuance on other grounds had failed, gave some basis for a belief that the asserted conflict either was fabricated[20] or was not a serious problem. Finally, to the extent that any specific attorney-client con-

flict was mentioned, the only statement made by Larkin concerned his association with Uptain's corporation as counsel and investor. If this was the origin of the conflict, then the court properly could have concluded that it should have been discovered and brought to the attention of the court sooner, if indeed the representation of Uptain by Larkin should have been undertaken at all. At the least, and regardless of the origin of the conflict, the court had a right to expect Larkin to have his co-counsel present when he sought to withdraw from the case.

By the same token, the claim of nonpayment of services did not compel a continuance. In the first place, Larkin did not claim that he would not eventually be paid, but only that one of Uptain's checks had been dishonored and that this had "created a problem back in Jacksonville." The fact that a single check was worthless would not alone justify an indefinite suspension of the trial, particularly with the government's case already complete and the defendant on the stand. The trial judge was entitled to take into account both the opportunity, that counsel did not take advantage of, to obtain earlier payment from Uptain, and the prejudice to Uptain in the eyes of the jury that might result if the attorney who began his direct examination suddenly disappeared. *Cf. Argo v. Wiman*, 209 F.Supp. 299, 304–05 (M.D.Ala.1962), *aff'd on other grounds*, 308 F.2d 674 (5 Cir. 1962), *cert. denied*, 371 U.S. 933, 83 S.Ct. 306, 9 L.Ed.2d 270 (1962). We therefore are unable to conclude that the court's refusal to allow withdrawal of counsel at the beginning of the second day of trial, pending arrival of co-counsel, was an abuse of discretion.

■ Several lessons to defense lawyers should emerge from this case. The first is that, in cases where there is a substantial basis for a continuance, the attor-

---

19. In making his claim to the court Larkin stated:

> There are many things that have developed during the course of this trial that I had no knowledge of.

20. We hasten to add that there is noting in the record to indicate that the district court disbelieved the allegation of conflict.

ney should present the claim as early as possible. Second, the attorney should exercise all reasonable diligence to prepare for trial despite the time constraints confronting him. Finally, such claims should be advanced with all the specificity and detail that is feasible under the circumstances. While some of these "lessons" are rules of law under *Miller* with respect to continuances to interview and subpoena witnesses, they are counsels of wisdom in any continuance situation. Only with detailed information as to counsel's efforts and the legitimate justifications for extra time can the court conclude that the motion is made for reasons other than delay. Only then can it be expected to subordinate the very legitimate needs of both the criminal justice system and the defendant for speedy and economical justice.

Finally, and without in any way disparaging the trial court, whose actions we today uphold, we must reiterate that a scheduled trial date should never become such an overarching end that it results in the erosion of the defendant's right to a fair trial. If forcing a defendant to an early trial date substantially impairs his ability to effectively present evidence to rebut the prosecution's case or to establish defenses, then pursuit of the goal of expeditiousness is far more detrimental to our common purposes in the criminal justice system than the delay of a few days or weeks that may be sought. The district courts to whom these difficult and inexact judgments are committed have, in the majority of cases, made them with a proper consideration of the rights of defendants to due process of law as well as the demands of judicial economy. Where, as here, it is possible to see how a denial of continuance resulted from a reasonable resolution of the various factors confronting a court, we will uphold its action, even if it may seem somewhat harsh.

## IV.

Appellant Uptain also claims that the trial court improperly intervened in the examination of witnesses on behalf of the government. We have examined the transcript of the trial both as a whole and with reference to the specific instances he cites and have found no improper questioning. All of the court's questions and comments were directed to bringing out the facts of the case. While some of the information thereby made available to the jury was somewhat harmful to Uptain's cause, there was no indication either of hostility toward the defendant or of a belief as to the merits of the case.[21] We find that the court's intervention in the trial was not error, much less reversible error. *See United States v. Hill*, 496 F.2d 201 (5 Cir. 1974); *United States v. Jacquillon*, 469 F.2d 380 (5 Cir. 1972); *O'Brien v. United States*, 411 F.2d 522 (5 Cir. 1969).

AFFIRMED.

---

**21.** What was said in *United States v. Cheramie*, 520 F.2d 325, 333 (5 Cir. 1975), applies fully to this case:

[A] trial is a truth-finding tool, basic to our ordered society, not a game of blind man's bluff. We guard against not only forced but unintelligent jury verdicts. As such, the judge must be informative and helpful, without being oppressive or dictatorial. Here, the district court ably performed these tasks while preserving the separate sphere of action assigned to the jury.