[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 14, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11105

_____

D. C. Docket No. 03-01578-CV-GAP-KRS

KONSTANTINOS X. FOTOPOULOS,

Petitioner-Appellee,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 14, 2008)**

Before BIRCH, BLACK and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

The two issues in this appeal by the Secretary of the Department of Corrections of Florida involve whether the Supreme Court of Florida unreasonably applied clearly established federal law when it upheld the death sentence of Konstantinos X. Fotopoulos entered after the State of Florida had presented an allegedly inconsistent theory of Fotopoulos's relative culpability in a co-conspirator's sentencing trial. The district court granted a writ of habeas corpus on two grounds: (1) Fotopoulos's trial counsel rendered ineffective assistance by failing to impeach the inconsistent theories presented by the State of Florida; and (2) the use of the inconsistent theories by the State of Florida violated Fotopoulos's right to due process. The district court reached its conclusion by revisiting, without so stating, the finding of fact by the Florida courts that Fotopoulos's counsel made a strategic decision. The district court then concluded that Fotopoulos's right to due process was also violated even though the Supreme Court of the United States has never held that the prosecution of two defendants based on inconsistent theories violates due process. We disagree with the decision of the district court on both grounds and conclude that the decision of the Supreme Court of Florida was not objectively unreasonable. We reverse and render judgment in favor of the Secretary.

## I. BACKGROUND

In 1989, Fotopoulos and Deidre Hunt, with whom Fotopoulos was having an extramarital affair, escorted Kevin Ramsey to an isolated rifle range. At the rifle range, Fotopoulos and Hunt tied Ramsey to a tree. Hunt, at the direction of Fotopoulos, shot Ramsey three times in the chest with a twenty-two-caliber rifle. Fotopoulos recorded the shooting on a videotape, but later stopped the recording and shot Ramsey in the head with an AK-47 assault rifle.

Fotopoulos used the videotape of Ramsey's murder to force Hunt to arrange the murder of Fotopoulos's wife, Lisa. Hunt eventually hired Bryan Chase to murder Lisa for $5000. Chase entered the Fotopoulos home and shot Lisa once in the head. Fotopoulos then shot Chase repeatedly and killed him. Lisa survived the attempted murder. Fotopoulos and Hunt were indicted on two counts of first-degree murder, two counts of attempted first-degree murder, two counts of solicitation to commit first-degree murder, one count of conspiracy to commit first-degree murder, and one count of burglary of a dwelling while armed.

Hunt pleaded guilty to all charges. In her initial penalty proceeding, which occurred before Fotopoulos's trial, Hunt argued that her involvement in these crimes was the result of domination and torture by Fotopoulos. The State of Florida responded that Hunt's involvement in these crimes was the result of her

love for power and money and not domination by Fotopoulos. Hunt was sentenced to death on September 13, 1990. Hunt eventually received a new trial and was sentenced to life in prison on May 7, 1998.

Fotopoulos's trial began on October 1, 1990. The State argued that Fotopoulos was the mastermind behind the murders of both Ramsey and Chase and the attempted murder of Lisa. The State argued that Fotopoulos dominated Hunt. The jury found Fotopoulos guilty of all charges and recommended a sentence of death. The trial court sentenced Fotopoulos to death.

Fotopoulos's conviction was affirmed on direct appeal. Fotopoulos filed a motion under Florida Rule of Criminal Procedure 3.850 that sought collateral relief. After an evidentiary hearing, in which Carmen Corrente, Fotopoulos's trial counsel, testified, the trial court denied the motion and the Supreme Court of Florida affirmed. Fotopoulos also filed a state habeas petition that was denied.

Fotopoulos filed a petition for a writ of habeas corpus in federal district court. 28 U.S.C. § 2254. The district court granted Fotopoulos habeas relief on two grounds. First, the district court held that Fotopoulos's trial counsel was ineffective because Corrente failed to utilize the inconsistent domination theories presented by the State to impeach the case of the State. Second, the district court held that the inconsistent positions by the State violated the Due Process Clause of

4

the Fourteenth Amendment.

## II. STANDARDS OF REVIEW

We review the grant of habeas corpus relief by the district court de novo. Sims v. Singletary, 155 F.3d 1297, 1304 (11th Cir. 1998) (citing Byrd v. Hasty, 142 F.3d 1395, 1396 (11th Cir. 1998)).  Fotopoulos's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996, "which limits our review of the decisions of the state courts and establishes a 'general framework of substantial deference' for reviewing 'every issue that the state courts have decided.'" Crowe v. Hall, 490 F.3d 840, 844 (11th Cir. 2007) (quoting Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir. 2005)).  We will affirm the decision of the Supreme Court of Florida unless its decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or there was an "unreasonable determination of the facts," id. § 2254(d)(2).  "[A] determination of a factual issue made by a State court [is] presumed to be correct.  The applicant [has] the burden of rebutting the presumption of correctness by clear and convincing evidence."  Id. § 2254(e)(1); Marquard v. Sec'y for the Dep't of Corr., 429 F.3d 1278, 1303 (11th Cir. 2005).

"The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1)

5

are separate bases for reviewing a state court's decisions." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) (citing Williams v. Taylor, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 1519 (2000)). "A state court decision is 'contrary to' clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Id. (citing Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000)). The decision of the Florida court is an "unreasonable application" of federal law if the state court applied the correct legal rule from the Supreme Court in an "objectively unreasonable" manner. Woodford v. Visciotti, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002). The federal case law relevant to this analysis is Supreme Court precedent "in existence at the time the conviction became final." Schwab v. Crosby, 451 F.3d 1308, 1324 (11th Cir. 2006), cert. denied, 127 S. Ct. 1126 (2007).

## III. DISCUSSION

Both issues in this appeal involve the inconsistent positions of the State of Florida in the trials of Hunt and Fotopoulos regarding whether Fotopoulos dominated Hunt. First, we consider whether Corrente was ineffective when he failed to impeach the case of the State with the inconsistent theories. Second, we

6

consider whether the use by the State of the inconsistent theories violated Fotopoulos's right to due process.

*A. Ineffective Assistance of Counsel*

The Secretary of Corrections contends that the district court did not defer, as required by section 2254(d)(2), to the finding of the Supreme Court of Florida that Corrente made a strategic decision not to challenge the inconsistent theories of the State of Florida regarding whether Fotopoulos dominated Hunt. Fotopoulos responds that Corrente was ineffective for failing to challenge the inconsistent theories of the State and the district court correctly concluded that the application of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), by the Florida courts was "objectively unreasonable." We agree with the Secretary.

The Supreme Court of Florida rejected Fotopoulos's argument that his trial counsel was ineffective for failing to impeach the theory of the State because it found that trial counsel "simply made a strategic decision" not to use that information. Fotopoulos v. State, 838 So. 2d 1122, 1130 (Fla. 2003). "The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct." Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998). The Supreme Court of Florida also held that, because the

7

strategic decision by Corrente was reasonable, Corrente's performance was not deficient. Fotopoulos, 838 So. 2d at 1130. This application of Strickland was reasonable. As the district court stated in its order, "Strategic choices made after a thorough investigation are virtually unassailable." See Strickland, 466 U.S. at 690, 104 S. Ct. at 2066.

Under the guise of concluding that the Supreme Court of Florida had unreasonably applied Strickland, the district court, without so stating, substituted an alternative reading of the factual record for the finding of the Supreme Court of Florida. During the evidentiary hearing of his motion for post-conviction relief under Rule 3.850, Fotopoulos asked Corrente, "Why not make the argument that the State is not being consistent here?" Corrente responded, "I don't really recall the thought process on that. I can't answer that." Relying on this testimony, the district court found that Corrente's "failure to focus on the State's inconsistent portrayal of Ms. Hunt was not a 'strategic decision.'" The district court did not mention whether or how Fotopoulos had presented "clear and convincing evidence" to rebut the factual finding of the Supreme Court of Florida that Corrente made a strategic decision. 28 U.S.C. § 2254(e)(1).

A review of Corrente's entire testimony, instead of the snippet relied upon by the district court, amply supports the finding of the Supreme Court of Florida

that Corrente made a strategic decision. Corrente explained that the domination theory was not a central component of the case against Fotopoulos; Corrente presented evidence that rebutted the domination theory; and the domination theory of the State was not necessarily inconsistent with the theory advanced in Hunt's sentencing proceeding. Corrente testified that Fotopoulos's suggestion that he should have rebutted the domination theory "presupposes that [the State] was really trying to prove that [Fotopoulos] dominated [Hunt]. I don't think that that's how it came down in our trial." Corrente did not think that the domination theory "was a major thrust of [the State's] case." Corrente testified that "any emphasis placed on the fact that she was dominated . . . was rebutted by a lot of other evidence." He "thought the evidence in the video tape and the other evidence in the trial disproved that theory on its own." Corrente also did not perceive the two theories as necessarily inconsistent. He "felt that the theory of the prosecution in [Hunt's sentencing] fit the evidence that they presented and that there was another interpretation."

The Supreme Court of Florida reasonably concluded that Corrente's "strategic" decision was not deficient performance. Evidence that the State presented inconsistent theories, on the one hand, would have detracted from Fotopoulos's main defense of actual innocence in the guilt phase of his trial. Had

9

Fotopoulos introduced evidence in his trial that the State argued at Hunt's sentencing that she was not controlled by Fotopoulos, that evidence still would have confirmed that the State consistently argued in both trials that Fotopoulos had a role in the murders. If Corrente had challenged the inconsistent theories, on the other hand, in the penalty phase, which did not focus on the alleged domination, Corrente would have opened the door for the State to review all of the evidence of Fotopoulos's domination of Hunt that had been successfully advanced during the guilt phase. Corrente reasonably believed that in the guilt phase he had sufficiently rebutted the domination theory but that in the penalty phase the subject was better left alone. In the light of this record, we cannot say that the decision of the Supreme Court of Florida was an unreasonable application of Strickland.

Even if we were to assume that Corrente's assistance was deficient, Fotopoulos has not established that he was prejudiced. Fotopoulos argues that the jury, if presented with the inconsistent theories of the State, may not have recommended a sentence of death, but the Supreme Court instructs us to "consider the totality of the evidence before the judge or jury" when evaluating whether deficient performance has prejudiced a defendant. Strickland, 466 U.S. at 695, 104 S. Ct. at 2069. The deficient performance is prejudicial if "there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the

10

balance of aggravating and mitigating circumstances did not warrant death." Id.

"A reasonable probability is a probability sufficient to undermine confidence in the

outcome." Id. at 694, 104 S. Ct. at 2068. Fotopoulos does not dispute that he was

the "prime motivator" and "bore prime responsibility" for two murders and the

attempted murder of his wife. Fotopoulos, 838 So. 2d at 1129. Our confidence in

Fotopoulos's sentence of death is not undermined when he does not dispute his

primary responsibility for the orchestration of these bizarre and grisly crimes.

*B. Due Process Violation*

The Secretary of Corrections argues that the district court compounded its

error when it concluded that the State had violated Fotopoulos's right to due

process by presenting inconsistent theories about Fotopoulos's domination of Hunt

in the trials of Fotopoulos and Hunt. The Secretary contends that the decision of

the Supreme Court of Florida was not contrary to "clearly established" federal law.

Fotopoulos responds that Berger v. United States, 295 U.S. 78, 55 S. Ct. 629

(1935), supports the decision of the district court that the inconsistent theories of

the State violated his right to due process. Again, we agree with the Secretary.

The district court concluded that the use by the State of inconsistent theories

was prosecutorial misconduct that "amounted to a due process violation." In

support of its conclusion, the district court relied on the decisions of circuit courts

11

and the decision of the Supreme Court in <u>Bradshaw v. Stumpf</u>, 545 U.S. 175, 125 S. Ct. 2398 (2005).  This analysis is contrary to our precedents.

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision.'" <u>Putman</u>, 268 F.3d at 1241 (quoting <u>Williams,</u> 529 U.S. at 412, 120 S. Ct. at 1523) (alterations omitted)).  Fotopoulos's conviction became final on May 17, 1993.  <u>Fotopoulos v. Florida</u>, 508 U.S. 924, 113 S. Ct. 2377 (1993) (denying cert.).  It is fanciful to suggest that the decision of the Supreme Court of Florida was somehow "contrary to . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), when the only decision of the Supreme Court of the United States mentioned by the district court was decided twelve years later.  Moreover, the <u>Bradshaw</u> Court did not hold that the use of inconsistent theories in the prosecution of two defendants violates the right to due process.

After the Secretary filed a motion for the district court to amend its judgment, Fed. R. Civ. P. 59(e), the district court recognized its error and referenced <u>Berger v. United States</u>, 295 U.S. 78, 55 S. Ct. 629 (1935), as the decision of the Supreme Court that supported its conclusion.  This post-hoc rationale also failed to give the proper deference to the decision of the Supreme

12

Court of Florida. In <u>Berger</u>, the Supreme Court ordered a new trial after it determined that the prosecutor had struck "foul" blows. <u>Id.</u> at 88, 55 S. Ct. at 633. The Court described the conduct of the prosecutor as "indecorous and improper" because he, among other things, bullied witnesses and misstated facts, but the <u>Berger</u> Court did not mention any issue about the use of alleged inconsistent theories. <u>Id.</u> at 84, 55 S. Ct. at 631.

The conduct of the State in this appeal is in no way similar to the misconduct of the prosecutor in <u>Berger</u>. Moreover, as Justice Thomas explained in his concurrence in <u>Bradshaw</u>, "[the Supreme] Court has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories." 545 U.S. at 190, 125 S. Ct. at 2409 (Thomas, J. concurring). For that reason, we cannot say that the decision of the Supreme Court of Florida "was contrary to . . . clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

## IV. CONCLUSION

The judgment of the district court is **REVERSED** and judgment is **RENDERED** in favor of the respondent.

13