[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10561
Non-Argument Calendar
_____

D.C. Docket No. 3:13-cv-01147-BJD-JRK


KYLE RAY HIMES,

Petitioner-Appellee,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 5, 2017)

Before HULL, WILSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Kyle Himes was convicted by a Florida jury of robbing a bank. After exhausting his state court remedies, he filed a habeas corpus petition in the district court pursuant to 28 U.S.C. § 2254. The district court conditionally granted Petitioner a writ of habeas corpus on his claim that the Florida trial court's denial of his motion for continuance to locate his sole alibi witness violated his due process rights. The Secretary for the Florida Department of Corrections ("Secretary') filed this appeal, arguing that the district court erred by granting Petitioner habeas relief because the state court's denial of Petitioner's claim was not contrary to, or an unreasonable application of clearly established Supreme Court precedent. After careful review, we agree with the Secretary, reverse the judgment of the district court, and remand with instructions to reinstate Petitioner's conviction and sentence.[1]

## I.    BACKGROUND

### A.    State Court Proceedings

#### 1.    Pre-Trial Proceedings and Trial

---

[1] We reject Petitioner's argument that we do not have jurisdiction to review the district court's conditional grant of a writ of habeas corpus. Contrary to Petitioner's claim, the Secretary did not need to obtain a certificate of appealability in order to file this appeal. *See Lawhorn v. Allen*, 519 F.3d 1272, 1285 n.20 (11th Cir. 2008) (explaining that an appeal by the State or federal government does not require a certificate of appealability); *see also* Fed. R. App. P. 22(b)(3) ("A certificate of appealability is not required when a state or its representative or the United States or its representative appeals.").

2

In January 2007, the State of Florida charged Petitioner by way of an information with one count of robbery, in violation of Fla. Stat. § 812.13(2)(c), for robbing the Southeastern Bank in Nassau County, Florida, on December 8, 2006.

Prior to trial, Petitioner filed a witness list with several names, including Regina Walker. One month after filing the witness list, Petitioner moved for a continuance to prepare for trial and to depose several witnesses who had not been located. Petitioner's trial was eventually set for the week of March 10, 2008, with a final pre-trial on February 28, 2008. On February 22, 2008, the State filed a statement of particulars, indicating that the robbery occurred on December 8, 2006, at approximately 4:53 p.m. at the Southeastern Bank in Hilliard, Florida. The State also demanded written notice of any alibi witnesses. On February 28, 2008, Petitioner filed a notice of alibi, stating that Walker would testify that Petitioner was at her and Jamie Gilbreth's home at the time of the alleged robbery. The State responded with a list of alibi-rebuttal witnesses, including Jamie and Raychelle Gilbreth and Erica Leech.

The State deposed Walker approximately one week prior to the scheduled trial. In her deposition, Walker stated that she lived with her boyfriend, Jamie Gilbreth. She had met Petitioner twice: once at a store and once at a barbeque at her home. When asked the date of the barbeque, Walker responded: "I'm not really sure. I thought it would be on a Saturday, but I'm not sure." She did not

3

know whether the barbeque was on a Friday (as was the day of the robbery), or a Saturday, but she knew that the barbeque was after Thanksgiving but before Christmas. She initially stated that she knew the barbeque was the day of the robbery because Raychelle Gilbreth called her to say that she had been arrested. However, Walker later conceded that she could not say with certainty that Petitioner was at her house the day of the robbery: December 8, 2006.

On the morning of trial, Petitioner moved for another continuance, seeking additional time to locate Walker, as Petitioner had been notified by Walker's stepfather that Walker had moved to Georgia. The State opposed the motion, on the basis that Walker testified at her deposition that she was not sure whether Petitioner was at her home on the day of the robbery. The State further asserted that it would burden the prosecution to continue the trial, as the State's witnesses were all available to begin trial. Petitioner argued that Walker's testimony was critical and that he had made several attempts to serve Walker in the past ten days, including hiring two different process servers. The district court denied the motion, stating that "[t]he matter ha[d] been set for trial for two months" and that the case needed to move forward.

At trial, the State presented testimony from several witnesses, including Jamie Gilbreth, Raychelle Gilbreth, and Erica Leech. Jamie Gilbreth, who was at that time in jail for an unrelated robbery charge, testified that Petitioner had asked

4

him to help rob a bank in Hilliard. Jamie also testified that Petitioner spent time at his house (that he shared with Walker) on the day of the robbery, but that Petitioner left the house with Jamie's sister, Raychelle Gilbreth. Neither Raychelle nor Petitioner were at Jamie's home just before 5:00 p.m. (the time of the robbery). The State also called Raychelle Gilbreth, who testified that she had pled guilty to robbery and was awaiting sentencing. She admitted robbing the Southeastern Bank in Hilliard on December 8, 2006, and explained that the robbery was Petitioner's idea and that he took all of the money after she robbed the bank. Another witness, Erica Leech testified that she met Petitioner at Jamie and Walker's residence on the day of the robbery, and that Petitioner and Raychelle left the residence around 4:00 p.m..

Petitioner testified in his own defense. He stated that he went to Jamie and Walker's home for a barbeque on the day of the robbery. He fell asleep at the party, woke up around 5:30 p.m., and left shortly thereafter. Petitioner denied going near the bank on the day of the robbery.

The jury found Petitioner guilty of robbery as charged. Petitioner moved for a new trial, asserting that he was prejudiced by the trial court's denial of his motion for continuance to produce a properly subpoenaed witness. The trial court denied the motion.

At sentencing, Petitioner again moved for a new trial on the ground that Raychelle Gilbreth perjured herself in her deposition and trial testimony. Raychelle was called to the stand and testified that she was not completely honest during her deposition, but that she had been truthful at trial on every point except for her testimony that Petitioner kept all of the money. On cross-examination, Raychelle maintained her testimony that Petitioner was involved in the robbery. The trial court granted Petitioner's motion for a new trial. Following the State's motion for rehearing, in which it asserted that the trial court lacked jurisdiction to grant Petitioner's oral motion for a new trial, the trial court granted the State's motion and set a date for sentencing. The trial court ultimately sentenced Petitioner to 15 years' imprisonment.

Petitioner appealed to the Florida appellate court. He argued in relevant part that the trial court erred by denying his motion for continuance, which prohibited him from calling a crucial alibi witness in support of his defense at trial and therefore violated his due process rights. The Florida appellate court affirmed in a per curiam opinion without explanation.

### 2.    State Habeas Proceeding

Petitioner filed a motion for state post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, challenging his conviction on other grounds.

The Florida trial court denied Petitioner's 3.850 motion, and the Florida appellate court affirmed in a per curiam opinion without explanation.[2]

### B.    Federal Habeas Petition

Petitioner subsequently filed the present § 2254 petition, asserting multiple grounds for relief.  Of relevance to this appeal, Petitioner argued in Ground One that the Florida trial court violated his due process rights under the Fifth and Sixth Amendments by denying his request for a continuance to locate his only alibi witness, Walker.  He asserted that the Florida trial court's denial of his claim was an unreasonable application of clearly established Supreme Court precedent in *Ungar v. Sarafite*, 376 U.S. 575 (1964), and *Lee v. Kemna*, 534 U.S. 362 (2002).

The district court conditionally granted Petitioner's § 2254 petition as to Ground One and denied his petition in all other respects.  In reaching this decision, the district court discussed the decision of the former Fifth Circuit in *Hicks v. Wainwright*, 633 F.2d 1146, 1147 (5th Cir. 1981), which had relied on the Supreme Court's decision in *Ungar* to hold that the denial of Hicks's motion for continuance to present critical defense testimony amounted to a violation of due process.  The district court noted that *Hicks* applied a multi-factor test for determining whether the denial of a request for a continuance was an abuse of

---

[2]  Though not relevant to the present appeal, there was a series of denials by the Florida trial court and subsequent remands by the Florida appellate court before the Florida appellate court ultimately affirmed the trial court's denial of Petitioner's 3.850 motion.

7

discretion as set forth by the former Fifth Circuit in *United States v. Uptain*, 531 F.2d 1281 (5th Cir. 1976).

Applying the factors set forth in the *Uptain* decision, the district court concluded that the Florida trial court abused its discretion in denying Petitioner's request for a continuance. The district court then found that Petitioner had shown specific substantial prejudice because Walker's testimony was essential to Petitioner's defense, her testimony was not adduced by any other witness, and her testimony would have disputed the testimony of the State's witnesses, many of whom had criminal records. The district court next concluded that the Florida appellate court's summary affirmance of the trial court's denial of the motion for continuance was contrary to Supreme Court precedent and objectively unreasonable because the Florida trial court failed to give adequate consideration to the "salient factors." Quoting the Supreme Court's decision in *Ungar*, the district court stated that the record demonstrated evidence of "a myopic insistence upon expediousness in the face of a justifiable request for delay," which resulted in Petitioner going to trial without a crucial alibi witness. Because Petitioner's right to present Walker as an alibi witness outweighed any inconvenience that would have resulted from granting a continuance, the district court concluded that it was objectively unreasonable to conclude that the Florida trial court was within its

8

discretion when it denied Petitioner's request for a continuance.  Accordingly, the district court granted Petitioner habeas relief as to his due process claim.

The district court entered judgment, conditionally[3] granting Petitioner's § 2254 petition with respect to Ground One.  The district court vacated Petitioner's robbery conviction and directed the State to "take all actions necessary to ensure that the state trial court is apprised of this ruling, that trial counsel is appointed to represent Petitioner . . . and that a new trial (or other appropriate disposition) is ordered in an expeditious fashion."  The Secretary filed this appeal.

In the meantime, the Secretary filed a motion to stay the judgment, which was denied by the district court.  The Secretary also filed a motion to stay the judgment pending appeal in our Court.  We granted that motion.

## II.    DISCUSSION

### A.    Applicable Standard

We review the district court's grant of a habeas corpus petition pursuant to § 2254 *de novo*.  *Fotopoulos v. Sec'y, Dep't of Corr.*, 516 F.3d 1229, 1232 (11th Cir. 2008).  The Antiterrorism and Effective Death Penalty Act of 1996

---

[3]  A conditional grant of habeas relief delays a prisoner's release for a certain period of time to permit the State to correct the constitutional defect.  *See Moore v. Zant*, 972 F.3d 318, 320 (11th Cir. 1992) ("Federal courts pursuant to their authority to dispose of habeas matters as 'law and justice require' often delay a state prisoner's release from custody for a reasonable time to allow the state an opportunity to correct the constitutional defect that make the custody unlawful."); *see also Magwood v. Patterson*, 561 U.S. 320, 347 (2010) (Kennedy, J, dissenting) ("[A] conditional grant of relief . . . allows the state court to correct an error that occurred at the original sentencing.").

("AEDPA") sets forth a standard that makes granting habeas relief difficult on a claim that the state court has adjudicated on the merits. *See White v. Woodall*, 572 U.S. __, 134 S. Ct. 1697, 1702 (2014). Under AEDPA, a federal court may only grant habeas relief on a claim if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

As contained in § 2254(d)(1), the phrase "clearly established" refers to the holdings of the Supreme Court's decisions, not dicta, as of the time of the applicable state court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). A state court decision is "contrary" to clearly established federal law if the state court "'contradicts the United States Supreme Court on a settled question of law or holds differently than did that Court on a set of materially indistinguishable facts.'" *Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1325 (11th Cir. 2013) (quoting *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1355 (11th Cir. 2009)). Moreover, a state court decision constitutes an "unreasonable application" of clearly established federal law, where the court identifies the correct governing principles, but unreasonably applies those principles to a petitioner's case. *Wellington v. Moore*, 314 F.3d 1256, 1261 (11th Cir. 2002). The pertinent inquiry is "not whether a federal court believes the state court's determination was correct

10

but whether that determination was unreasonable—a substantially higher threshold." *Evans*, 703 F.3d at 1325 (quotation omitted).

In the present case, the Florida appellate court denied Petitioner's claim without explanation.  Because we interpret the Florida appellate court's decision as a denial on the merits, it is entitled to deference under § 2254(d).  *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002) (concluding that state court's summary denial of a claim is considered an adjudication on the merits for purposes of § 2254(d)(1)).  Where, as here, the state court does not provide an explanation for its reasoning, the petitioner must show that there was no reasonable basis for the state court's decision to deny relief.  *See Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), *cert. granted*, (U.S. Feb. 27, 2017) (No. 16-6855).

## B.    Due Process Violation

The Secretary argues that the district court erred by granting Petitioner a writ of habeas corpus because it conducted a *de novo* review of Petitioner's due process claim, relied on circuit precedents to conclude that the denial of Petitioner's motion for continuance violated due process, and relied on these *de novo* determinations to find that the Florida appellate court's denial of this claim was contrary to, and an unreasonable application of Supreme Court precedent.

The district court granted habeas relief because it concluded that the Florida trial court's denial of Petitioner's motion for continuance constituted a due process violation based on the factors set forth in the former Fifth Circuit's decisions in *Uptain* and *Hicks*. The district court then determined that the Florida appellate court's summary affirmance of the trial court's denial of Petitioner's motion for continuance was contrary to, or an unreasonable application of Supreme Court precedent, apparently relying on the Supreme Court's decision in *Ungar*.

Here, the district court erred by conditionally granting Petitioner a writ of habeas corpus on his due process claim because it did not apply the deferential review standard required by § 2254(d). The district court acknowledged that the state court's decision was entitled to AEDPA deference, but instead of determining whether the Florida appellate court's decision denying Petitioner's due process claim was reasonable, it considered whether Petitioner's due process rights were violated by the Florida trial court's denial of his motion for continuance. This constitutes error.

Applying the deference required by AEDPA, the Florida appellate court's rejection of Petitioner's due process claim was not contrary to, or an unreasonable application of clearly established Supreme Court precedent. The Supreme Court has never held that the denial of a motion for continuance to secure an alibi witness amounts to a due process violation. As a result, the Florida appellate court's

12

summary affirmance of the trial court's denial of Petitioner's motion for continuance cannot be contrary to clearly established Supreme Court precedent. *See Dombrowski v. Mingo*, 543 F.3d 1270, 1274 (11th Cir. 2008) ("[W]hen no Supreme Court precedent is on point, we have held that a state court's conclusion cannot be 'contrary to clearly established Federal law as determined by the U.S. Supreme Court.'" (quoting *Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003)).

Petitioner argues that the Supreme Court's decisions in *Lee* and *Ungar* clearly establish that the denial of a motion for continuance to secure an alibi witness amounts to a due process violation, and that the Florida appellate court's decision was contrary to those precedents. We disagree. As to *Lee*, the Supreme Court concluded that the district court and the court of appeals had incorrectly determined that the petitioner's due process claim, based on the denial of a motion for continuance to secure alibi witness testimony, was procedurally defaulted. *Lee*, 534 U.S at 369, 387–88. Contrary to Petitioner's contentions, the Supreme Court in *Lee* did not reach the merits of the petitioner's due process claim, but instead remanded the case to the lower courts to address it in the first instance. *See id.* at 387. Because *Lee*'s holding was limited to a procedural default issue, it does not clearly establish that the denial of a motion for continuance to secure an alibi witness amounts to a due process violation. *See Fotopoulous*, 516 F.3d at 1234–35

13

(explaining that clearly established federal law refers to the holdings of the Supreme Court).

In *Ungar*, a case involving a contempt proceeding, the Supreme Court held that the trial court's denial of the defendant's motions for continuance—for counsel's additional preparation and for the defendant to obtain medical proof and expert testimony—did not violate the defendant's due process rights. *Ungar*, 376 U.S. at 590–91. The Supreme Court noted that although the disposition of a motion for continuance is typically within the discretion of the trial judge, "a myopic insistence upon expeditiousness in the face of a justifiable request for [a] delay can render the right to defense with counsel an empty formality." *Id.* at 589–90. The Court further stated that there were no tests for determining whether a "denial of a continuance is so arbitrary [that it] violate[s] due process," and that the determination must be based on the circumstances of each individual case. *Id.* Because *Ungar* did not consider whether the denial of a motion for continuance to secure an alibi witness constituted a due process violation, it arguably does not constitute clearly established federal law. *Fotopoulous*, 516 F.3d at 1234–35. But assuming *Ungar* constitutes clearly established federal law, the Florida appellate court's decision was not contrary to *Ungar*, as the facts of the present case are not materially indistinguishable from the facts in *Ungar*.

14

The district court also erred by concluding that the Florida appellate court's denial of Petitioner's due process claim involved an unreasonable application of *Ungar*. The Supreme Court's statement in *Ungar*—that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality"—is a fairly general rule. *Ungar*, 376 U.S. at 589. The multi-factor test that the district court relied upon to conclude that the Florida trial court's denial of Petitioner's motion for continuance violated his due process rights originated in the former Fifth Circuit's decision in *Uptain*, not *Ungar*. *See Uptain,* 531 F.2d at 1287. The Supreme Court has made clear that courts may not rely on circuit precedent when determining the reasonableness of a state court's decision. *See Parker v. Matthews*, 567 U.S. 37, 132 S. Ct. 2148, 2155 (2012) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'"). Therefore, the district court erred to the extent it relied on circuit court precedents to determine that the Florida appellate court's decision was objectively unreasonable.

Because *Ungar* announced a general rule, the Florida appellate court had "more leeway" in denying Petitioner's due process claim. *See Evans*, 703 F.3d at 1326 (explaining that the more general the rule announced by the Supreme Court, the "more leeway courts have in reaching outcomes in case-by-case determinations." (quotation omitted)). Under Florida law, to prevail on a motion

15

for continuance based on the absence of a witness, the defense must show: "(1) prior due diligence to obtain the witness's presence; (2) that substantially favorable testimony would have been forthcoming; (3) that the witness was available and willing to testify; and (4) that the denial of the continuance caused material prejudice." *Geralds v. State*, 674 So. 2d 96, 99 (Fla. 1996).

Here, there are several reasons in the record that support the Florida appellate court's summary affirmance of the trial court's denial of Petitioner's motion for continuance. For starters, although Petitioner asserted that Walker would provide crucial alibi testimony, her deposition does not support this contention. Indeed, Walker was not even sure about the date of the barbeque that was Petitioner's purported alibi, and she could not say for certain if Petitioner was at her house on the date of the robbery. Even if her testimony were sufficient to establish that Petitioner was at her house on the day of the robbery, that issue does not appear to be in dispute because at least two other witnesses testified at trial that Petitioner was at Walker's house on the date of the robbery. Both of those witnesses, however, testified that Petitioner left the barbeque with Raychelle (his co-defendant) before the time of the robbery. Notably, Walker's deposition testimony does not indicate what time Petitioner arrived at her home for the barbeque and whether and when he left her home. Thus, Walker's testimony that Petitioner was at the barbeque was cumulative of other witness testimony. There is

16

also no indication that Walker's testimony would have contradicted the other witnesses who testified that Petitioner left the barbeque with enough time to commit the robbery. Further, although Raychelle later admitted that she lied about some things during her testimony at Petitioner's trial, she continued to maintain her testimony that Petitioner was involved in the robbery. Therefore, the Florida appellate court's decision affirming the denial of Petitioner's continuance motion was not objectively unreasonable.

## III.　CONCLUSION

Based on the foregoing, we **REVERSE** the judgment of the district court and **REMAND** with instructions to reinstate Petitioner's conviction and sentence.[4]

---

[4] Petitioner's motion to expedite the appeal is DENIED as moot.

17